**Exhibit 1**

**August 16, 2011 Version of the Second Amended Plan**

**THIS IS NOT A SOLICITATION OF VOTES ON THE PLAN. VOTES MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS PLAN IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT.**

Ira S. Dizengoff (ID-9980)
David H. Botter (DB-2300)
Kenneth A. Davis (KD-9070)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)

Attorneys for the Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| PETRORIG I PTE LTD, <u>et al.</u>, | : | Case No. 09-13083 (JMP) |
|  | : |  |
|  | : |  |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------x

**<u>DEBTORS' THIRD AMENDED JOINT PLAN OF REORGANIZATION</u>**
**<u>PURSUANT TO CHAPTER 11 OF THE UNITED STATES</u>**
**<u>BANKRUPTCY CODE</u>**

**August 16, 2011**

# TABLE OF CONTENTS

**ARTICLE I DEFINITIONS AND GENERAL PROVISIONS** ................................................... 1
    1.1    *DEFINITIONS* ............................................................................................................ *1*
    1.2    *RULES OF INTERPRETATION* ................................................................................... 12
    1.3    *TIME* ....................................................................................................................... 13

**ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS** .......................................... 13
    2.1    *SUMMARY* ................................................................................................................ 13
    2.2    *ADMINISTRATIVE EXPENSE CLAIMS* ..................................................................... 13
    2.3    *PROFESSIONAL COMPENSATION AND REIMBURSEMENT CLAIMS* ......................... 14
    2.4    *PRIORITY TAX CLAIMS* ......................................................................................... 14

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**
....................................................................................................................................... **14**
    3.1    *SUMMARY* ................................................................................................................ 14
    3.2    *CLASS PRI-1 – OTHER SECURED CLAIMS* ............................................................ 15
    3.3    *CLASS PRI-2 – PRIORITY NON-TAX CLAIMS* ...................................................... 16
    3.4    *CLASS PRI-3 – 9.75% BOND CLAIMS* .................................................................. 16
    3.5    *CLASS PRI-4 – GENERAL UNSECURED CLAIMS* .................................................... 17
    3.6    *CLASS PRI-5 – LOG GROUP CLAIM* ..................................................................... 17
    3.7    *CLASS PRI-6– INTERCOMPANY CLAIMS* .............................................................. 18
    3.8    *CLASS PRI-7 – INTERESTS* .................................................................................... 18
    3.9    *CLASS PRII-1 – OTHER SECURED CLAIMS* .......................................................... 19
    3.10   *CLASS PRII-2 – PRIORITY NON-TAX CLAIMS* ..................................................... 19
    3.11   *CLASS PRII-3 – 9.75% BOND CLAIMS* ................................................................. 19
    3.12   *CLASS PRII-4 – GENERAL UNSECURED CLAIMS* ................................................... 20
    3.13   *CLASS PRII-5 – LOG GROUP CLAIM* .................................................................... 20
    3.14   *CLASS PRII-6– INTERCOMPANY CLAIMS* ............................................................ 21
    3.15   *CLASS PRII-7 – INTERESTS* ................................................................................... 21
    3.16   *CLASS PRIII-1 – OTHER SECURED CLAIMS* ........................................................ 22
    3.17   *CLASS PRIII-2 – PRIORITY NON-TAX CLAIMS* .................................................... 22
    3.18   *CLASS PRIII-3 – FRN BOND CLAIMS* ................................................................... 22
    3.19   *CLASS PRIII-4– GENERAL UNSECURED CLAIMS* .................................................. 23
    3.20   *CLASS PRIII-5 – LOG GROUP CLAIM* ................................................................... 23
    3.21   *CLASS PRIII-6 – FRN DEFICIENCY CLAIMS* ........................................................ 24
    3.22   *CLASS PRIII-7 – INTERESTS* .................................................................................. 24

**ARTICLE IV IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS
IMPAIRED; ACCEPTANCE OR REJECTION OF THE PLAN** ....................................... **24**
    4.1    *DEEMED ACCEPTANCE OF PLAN* .......................................................................... 24
    4.2    *DEEMED REJECTION OF PLAN* .............................................................................. 25
    4.3    *NONCONSENSUAL CONFIRMATION* ...................................................................... 25

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES** ......................................................................................................................... **25**
    5.1    *ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.* 25
    5.2    *CLAIMS BASED ON REJECTION OF EXECUTORY CONTRACTS, UNEXPIRED LEASES.* ...... 25

**ARTICLE VI MEANS FOR IMPLEMENTATION OF PLAN** ............................................ **26**
6.1 *LIQUIDATING FUND* ............................................................................. *26*
6.2 *EXECUTION OF THE LIQUIDATING TRUST AGREEMENT* ............................. *26*
6.3 *PURPOSE OF THE LIQUIDATING FUND* ..................................................... *26*
6.4 *TRUST INTERESTS* ................................................................................. *26*
6.5 *APPOINTMENT OF THE LIQUIDATING AGENT* ........................................... *26*
6.6 *CONTINUED CORPORATE EXISTENCE* ...................................................... *27*
6.7 *POWERS AND DUTIES OF THE LIQUIDATING AGENT* .................................. *27*
6.8 *DIRECTORS AND OFFICERS OF POST-CONFIRMATION DEBTORS/LIQUIDATING FUND* *28*
6.9 *POST EFFECTIVE DATE PROFESSIONAL FEES AND EXPENSES* ...................... *29*
6.10 *POST EFFECTIVE DATE FEES AND EXPENSES* ............................................ *29*
6.11 *FIDUCIARY DUTIES OF THE LIQUIDATING AGENT* ..................................... *29*
6.12 *DISSOLUTION OF THE LIQUIDATING FUND* ............................................... *29*
6.13 *FEDERAL INCOME TAX TREATMENT* ...................................................... *30*
6.14 *CANCELLATION OF EXISTING SECURITIES AND AGREEMENTS* ..................... *31*
6.15 *CANCELLATION OF BONDS AND TERMINATION OF LOAN AGREEMENTS* ...................... *31*
6.16 *RELEASE OF LIENS* ............................................................................... *32*
6.17 *CORPORATE ACTION* ............................................................................ *32*
6.18 *EFFECTUATING DOCUMENTS; FURTHER TRANSACTIONS* ........................... *33*
6.19 *EXEMPTION FROM CERTAIN TRANSFER TAXES AND RECORDING FEES* ...................... *33*
6.20 *FURTHER AUTHORIZATION* ..................................................................... *33*

**ARTICLE VII DISTRIBUTIONS** ............................................................................... **33**
7.1 *DISBURSEMENT* ................................................................................... *33*
7.2 *TIMING AND CALCULATION OF AMOUNTS TO BE DISTRIBUTED* ................... *33*
7.3 *DISTRIBUTIONS OF CASH* ...................................................................... *34*
7.4 *NO INTEREST ON CLAIMS OR INTERESTS* ................................................ *34*
7.5 *DELIVERY OF DISTRIBUTIONS* ................................................................ *34*
7.6 *DISTRIBUTIONS TO HOLDERS AS OF THE DISTRIBUTION RECORD DATE* ...................... *35*
7.7 *DISPUTED CLAIMS RESERVE* .................................................................. *35*
7.8 *DE MINIMIS DISTRIBUTIONS* .................................................................. *35*
7.9 *WITHHOLDING TAXES* ........................................................................... *36*
7.10 *DISBURSEMENTS TO BONDHOLDERS* ....................................................... *36*
7.11 *DISBURSEMENTS TO THE LOG GROUP* ..................................................... *36*
7.12 *DISBURSEMENTS TO GENERAL UNSECURED CLAIM HOLDERS* ..................... *36*
7.13 *ANNUAL DISTRIBUTIONS* ....................................................................... *37*

**ARTICLE VIII PROCEDURES FOR TREATING AND RESOLVING DISPUTED CLAIMS** ............................................................................................................... **37**
8.1 *OBJECTIONS TO CLAIMS* ....................................................................... *37*
8.2 *NO DISTRIBUTIONS PENDING ALLOWANCE* ............................................. *37*
8.3 *ESTIMATION OF CLAIMS* ....................................................................... *37*
8.4 *RESOLUTION OF CLAIMS OBJECTIONS* .................................................... *38*
8.5 *DISTRIBUTIONS AFTER ALLOWANCE* ...................................................... *38*
8.6 *FRACTIONAL TRUST INTERESTS* ............................................................ *38*
8.7 *SETOFF AND RECOUPMENT* .................................................................... *38*

**ARTICLE IX EFFECT OF PLAN CONFIRMATION** ............................................................ **39**
   9.1    *SATISFACTION OF CLAIMS*................................................................ *39*
   9.2    *RELEASES PURSUANT TO THE PLAN*................................................ *39*
   9.3    *RELEASES PURSUANT TO LOG CLAIMS STIPULATION*.................... *40*
   9.4    *PRESERVATION OF CAUSES OF ACTION* ........................................ *41*
   9.5    *EXCULPATION AND LIMITATION OF LIABILITY*.............................. *41*
   9.6    *INJUNCTION* .................................................................................. *42*
   9.7    *INSURANCE* .................................................................................... *42*
   9.8    *EFFECT OF CONFIRMATION* ............................................................ *43*

**ARTICLE X CONDITIONS PRECEDENT** ............................................................................ **43**
   10.1   *CONDITIONS TO THE EFFECTIVE DATE*.......................................... *43*
   10.2   *WAIVER OF CONDITIONS TO CONSUMMATION* .............................. *44*

**ARTICLE XI RETENTION AND SCOPE OF JURISDICTION OF THE BANKRUPTCY COURT** ..................................................................................................................................... **44**
   11.1   *RETENTION OF JURISDICTION* ...................................................... *44*
   11.2   *FINAL DECREE*.............................................................................. *45*

**ARTICLE XII MISCELLANEOUS PROVISIONS** ............................................................... **46**
   12.1   *MODIFICATION OF THE PLAN.* ...................................................... *46*
   12.2   *ALLOCATION OF PLAN DISTRIBUTIONS BETWEEN PRINCIPAL AND INTEREST*.............. *46*
   12.3   *CREDITORS' COMMITTEE* ............................................................... *46*
   12.4   *GOVERNING LAW* .......................................................................... *46*
   12.5   *HEADINGS* .................................................................................... *47*
   12.6   *REVOCATION OF PLAN*................................................................... *47*
   12.7   *SEVERABILITY OF PLAN PROVISIONS* ........................................... *47*
   12.8   *NO ADMISSIONS; OBJECTION TO CLAIMS* ..................................... *47*
   12.9   *SPECIAL PROVISION GOVERNING UNIMPAIRED CLAIMS* ............... *47*
   12.10  *SUBSTANTIAL CONSUMMATION* ..................................................... *48*
   12.11  *NO BAR TO SUITS* ........................................................................ *48*
   12.12  *EXHIBITS/SCHEDULES* ................................................................... *48*
   12.13  *INCONSISTENCY*............................................................................ *48*
   12.14  *NOTICES* ....................................................................................... *48*
   12.15  *DESIGNATED NOTICE* .................................................................... *50*

## INTRODUCTION

PetroRig I Pte Ltd, PetroRig II Pte Ltd and PetroRig III Pte Ltd (collectively, the "Debtors" and each, a "Debtor") propose the following third amended joint plan of reorganization (the "Plan") for resolution of outstanding creditor Claims against and equity Interests in the Debtors pursuant to title 11 of the United States Code, 11 U.S.C. §§101-1532. The Plan contemplates that it will be submitted for approval as a whole such that a failure to confirm the Plan as to any of the Debtors will result in the Plan not being confirmed as to the remainder of the Debtors. The Plan does not, however, seek to effect a substantive consolidation or other combination of the separate Estate of each Debtor, but instead provides that creditors of each Debtor will be permitted to assert their Claims only against such Debtor and will receive a recovery based on the value of such Debtor's Estate. The Disclosure Statement Filed contemporaneously with the Plan contains a discussion of the Debtors' history, businesses, assets, results of operations, and projections, as well as a summary and description of the Plan and certain related matters. The Debtors are proponents of the Plan within the meaning of Bankruptcy Code section 1129.

THIS IS NOT A SOLICITATION OF VOTES ON THE PLAN. VOTES MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS PLAN IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. ALL HOLDERS OF CLAIMS AND INTERESTS ELIGIBLE TO VOTE TO ACCEPT OR REJECT THE PLAN ARE ENCOURAGED TO READ THE PLAN AND DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I
## DEFINITIONS AND GENERAL PROVISIONS

For the purposes of the Plan, except as otherwise expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in section 1.1 of the Plan. Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1     *Definitions*.

The following terms shall have the following meanings when used in the Plan:

1.1.1     "9.75% Loan Agreement" means that loan agreement dated as of May 22, 2006 between PetroMena as issuer and the 9.75% Trustee.

1.1.2     "9.75% Bonds" means those 9.75% bonds issued by PetroMena due May 24, 2012 and guaranteed by PetroRig I and PetroRig II.

1.1.3     "9.75% Bond Claim" means any Allowed Claim arising under or in connection with the 9.75% Bonds or the 9.75% Loan Agreement.

1.1.4 "9.75% Trustee" means Norsk Tillitsmann, ASA, as trustee under the 9.75% Loan Agreement.

1.1.5 "10.85% Loan Agreement" means that loan agreement dated as of November 16, 2007 between PetroMena as issuer and the 10.85% Trustee.

1.1.6 "10.85% Bonds" means those 10.85% bonds issued by PetroMena due November 19, 2010.

1.1.7 "10.85% Trustee" means Norsk Tillitsmann, ASA, as trustee under the 10.85% Loan Agreement.

1.1.8 "Administrative Expense Claim" means a Claim for payment of costs and expenses of administration of the Estates of a kind specified in Bankruptcy Code sections 503(b) or 1114(e)(2) and entitled to priority pursuant to Bankruptcy Code sections 507(a)(1) or 507(b), including, but not limited to, the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estates and operating the business of the Debtors, including wages, salaries or commissions for services rendered after the Petition Date, Professional Compensation, and all fees and charges assessed against the Estates under Chapter 123 of title 28 of the United States Code.

1.1.9 "Allowed" means, when used in reference to a Claim or Interest, such Claim or Interest, or any portion thereof that (i) has been allowed by a Final Order of the Bankruptcy Court; (ii) is listed in any of the Debtors' Schedules and for which no contrary proof of Claim or Interest has been Filed, other than a Claim or Interest that is listed in any of the Debtors' Schedules at zero or as disputed, contingent, or unliquidated; (iii) is a General Unsecured Claim, listed as Allowed on Exhibit A to the Plan, (iv) is evidenced by a proof of Claim or Interest that has been timely Filed on or before the applicable bar date or deemed to be timely Filed and as to which (a) the Debtors determine that there is no basis to object in whole or in part, (b) no objection to its allowance has been Filed on or before the Claims Objection Deadline or (c) any objection to its allowance has been settled or withdrawn, or has been overruled by a Final Order; or (v) is allowed pursuant to the terms of the Plan (regardless of whether such Claim or Interest has been listed by the Debtors in their Schedules and regardless of whether a proof of Claim has been Filed in respect thereof); provided, however, that Claims or Interests allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered Allowed Claims or Interests for the purposes of Distribution under the Plan.

1.1.10 "Avoidance Action" means any and all actual or potential claims of the Estate or Causes of Action arising out of or maintainable pursuant to Bankruptcy Code sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 or under any other similar applicable law, regardless of whether or not such action has been commenced prior to the Effective Date.

1.1.11 "Ballot" means each of the forms of ballot that were distributed with the Disclosure Statement to Holders of Claims or Interests included in Classes PRI-4, PRI-5, PRII-4,

PRII-5, PRII-7, PRIII-3, PRIII-4, PRIII-5 and PRIII-6 that are Impaired under the Plan and are entitled under ARTICLE III of the Plan to vote to accept or reject the Plan.

1.1.12 "Bankruptcy Code" means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

1.1.13 "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York, or, in the event such court ceases to exercise jurisdiction over the Chapter 11 Cases, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Cases in lieu of the United States Bankruptcy Court for the Southern District of New York.

1.1.14 "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applied to the Chapter 11 Cases or proceedings therein, as the case may be.

1.1.15 "Bondholders" means the holders from time to time, including former holders, of any or all of the 9.75% Bonds, the FRN Bonds or the 10.85% Bonds, provided, however, that *for purposes of voting to accept or reject the Plan*, "Bondholders" refers to beneficial holders of the Bonds as of the Voting Record Date.

1.1.16 "Bonds" means each or all of the 9.75% Bonds, the FRN Bonds or the 10.85% Bonds, as applicable.

1.1.17 "Business Day" means any day other than a Saturday, Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

1.1.18 "Cash" means legal tender of the United States of America and equivalents thereof.

1.1.19 "Causes of Action" means, without limitation, all Avoidance Actions, any and all actions, causes of action, suits, accounts, agreements, promises, rights to payment and claims of any of the Debtors, whether known or unknown, existing or hereafter arising, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, at law, in equity, or otherwise; provided, however, Causes of Action shall not include any actions, causes of action, suits, accounts, agreements, promises, rights to payment or claims released pursuant to section 9.2 of the Plan or the LOG Claims Stipulation.

1.1.20 "Certificate" means any instrument, including, without limitation, any note, bond, indenture, or other document evidencing or creating any indebtedness or obligation of any of the Debtors, evidencing a Claim against any of the Debtors; provided, however, that Certificates shall not include Existing Securities.

1.1.21    "Chapter 11 Cases" means the chapter 11 cases of the Debtors that are pending and being administered in the Bankruptcy Court with case numbers 09-13083, 09-13084 and 09-13085.

1.1.22    "Claim" means a claim against any of the Debtors, whether or not asserted, as defined in Bankruptcy Code section 101(5).

1.1.23    "Claims Objection Deadline" means, for each Claim, the later of (a) one hundred eighty days after the Effective Date and (b) such other period of limitation as may be specifically fixed by a Final Order of the Bankruptcy Court for objecting to such Claim.

1.1.24    "Class" means a category of Claims or Interests described in the Plan.

1.1.25    "Class PRI-6 Trust Interests" means Trust Interests issued to Holders of Class PRI-6 Claims.

1.1.26    "Class PRII-7 Trust Interests" means Trust Interests issued to Holders of Class PRII-7 Interests.

1.1.27    "Class PRIII-6 Trust Interests" means Trust Interests issued to Holders of Class PRIII-6 Claims.

1.1.28    "Committee" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases pursuant to Bankruptcy Code section 1102(a), as reconstituted from time to time, and its current and former members.

1.1.29    "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

1.1.30    "Confirmation Hearing" means the hearing before the Bankruptcy Court to consider confirmation of the Plan and related matters under Bankruptcy Code section 1128, as such hearing may be adjourned or continued, from time to time.

1.1.31    "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

1.1.32    "Construction Contract II Proceeds" means the funds remaining with PetroRig II after payment of Jurong, from the sale of the construction contract, dated as of March 23, 2006, between Jurong and PetroRig II, pursuant to the Bankruptcy Court's *Order (I) Authorizing the Sale of Certain Asset, (II) Authorizing the Assumption and Assignment of Certain Contract, and (III) Granting Related Relief*, dated September 29, 2009.

1.1.33    "Construction Contract III Proceeds" means the funds remaining with PetroRig III after payment of Jurong, from the sale of the construction contract, dated as of January 25, 2007, between Jurong and PetroRig III, pursuant to the Bankruptcy Court's *Order (I) Authorizing the Sale of PetroRig III's Interest in Construction Contract III, (II) Authorizing the Assumption and Assignment of Construction Contract III, and (III) Granting Related Relief*, dated December 12, 2009.

1.1.34    "Debtor" means each of PetroRig I, PetroRig II and PetroRig III.  When the context so requires, Debtor shall include each Debtor's Estate, each of the Post-Confirmation Debtors, and/or the Liquidating Agent.

1.1.35    "Debtor Release" means the releases granted pursuant to section 9.2.1 of the Plan.

1.1.36    "Deficiency Claim" means the Allowed Class PRIII-6 deficiency claims granted to the Holders of Allowed Class PRIII-3 FRN Bond Claims in an aggregate amount equal to the amount by which the FRN Bond Claims exceed the value of available Construction Contract III Proceeds.

1.1.37    "Designated Notice" means not less than twenty (20) days notice and an opportunity for a hearing as defined in Bankruptcy Code section 102(1), with notice limited to the Liquidating Agent, the United States Trustee, and other parties in interest who, after entry of the Confirmation Order, file a request for such notice with the clerk of the Bankruptcy Court and serve a copy of same on counsel for the Liquidating Agent.

1.1.38    "Disclosure Statement" means that certain disclosure statement relating to the Plan dated August [__], 2011, as such disclosure statement may be amended, modified or supplemented from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to the Disclosure Statement Order.

1.1.39    "Disclosure Statement Order" means that *Order Granting Debtors' Motion for an Order Approving the Debtors' Disclosure Statement and Establishing Solicitation and Voting Procedures with Respect Thereto*, dated [_____], 2011.

1.1.40    "Disputed Claim" means, in reference to any Claim or Interest, including, any portion of such Claim or Interest (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order, nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, or (b) for which proof of Claim or Interest has been timely filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtors or any party in interest has interposed a timely objection or request for estimation prior to the Claims Objection Deadline in accordance with the Plan, which objection or request for estimation has not been withdrawn or determined by Final Order.

1.1.41    "Disputed Claims Reserve" shall have the meaning ascribed to such term in section 7.7 hereof.

1.1.42    "Distribution" means any distribution made under the Plan by the Debtors or the Liquidating Agent, as applicable, to a Holder of an Allowed Claim or Interest, or Trust Interest, as applicable.

1.1.43    "Distribution Date" means (i) the Initial Distribution Date and (ii) any subsequent date on which a Distribution is made by the Liquidating Agent.

1.1.44    "Distribution Record Date" means the date for determining the identity of Holders of Allowed Claims entitled to Distributions under the Plan.  The Distribution Record

Date shall be established by the Confirmation Order, or if the Confirmation Order does not explicitly establish a Distribution Record Date, shall be the date of the Confirmation Order.

1.1.45 "Effective Date" means the first Business Day on which all the conditions precedent to effectiveness of the Plan specified in section 10.1 hereof shall have been satisfied or waived as provided in section 10.2 hereof, *provided*, *however*, that if a stay, injunction or similar prohibition of the Confirmation Order is in effect, the Effective Date shall be the first Business Day after such stay, injunction or similar proceeding is no longer in effect.

1.1.46 "Entity" means an entity as defined in Bankruptcy Code section 101(15).

1.1.47 "Estate" means the estate of each of the Debtors, individually or collectively, as is appropriate in the context, created pursuant to Bankruptcy Code section 541.

1.1.48 "Estate Parties" shall have the meaning as set forth in the LOG Claims Stipulation.

1.1.49 "Executory Contract" means any and all executory contracts to which the Debtors are a party that are subject to assumption or rejection under Bankruptcy Code section 365.

1.1.50 "Existing Securities" means, collectively, shares of stock of the Debtors, regardless of class, that are authorized, issued and outstanding on the Effective Date immediately prior to the Plan taking effect, and all options, warrants and rights (whether fixed or contingent, matured or unmatured, disputed or undisputed) of the Debtors, whether contractual, legal, or otherwise, to acquire any of the foregoing.

1.1.51 "File(d)" means file(d) of record and enter(ed) on the docket in the Chapter 11 Cases or in the case of a proof of Claim, deliver(ed) to the clerk of the Bankruptcy Court.

1.1.52 "Final Distribution Date" means the date, following payment of the Liquidation Expenses, on which the distribution of all Remaining Assets and Retained Proceeds by the Liquidating Agent occurs in accordance with the Plan.

1.1.53 "Final Order" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for a stay, new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari*, or move for a stay, new trial, reargument or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section

502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

1.1.54    "FRN Loan Agreement" means that loan agreement dated as of February 15, 2007 between PetroRig III as issuer and the FRN Trustee.

1.1.55    "FRN Bonds" means the floating rate bonds issued by PetroRig III due February 20, 2014.

1.1.56    "FRN Bond Claim" means the Allowed Claims arising under or in connection with the FRN Bonds or the FRN Loan Agreement, which Claims shall be Allowed in the aggregate amount of $[_____], in full and final satisfaction of all such Claims.

1.1.57    "FRN Trustee" means Norsk Tillitsmann, ASA, as trustee under the FRN Loan Agreement.

1.1.58    "General Unsecured Claim" means any Claim against the Debtors, including, the Deficiency Claim, other than Other Secured Claims, 9.75% Bond Claims, FRN Bond Claims, Priority Non-Tax Claims, Intercompany Claims, LOG Group Claims, Priority Tax Claims or Administrative Expense Claims.

1.1.59    "General Unsecured Claim Holder Contribution" means, as further set forth in section 7.11, the aggregate amount of $500,000 to be funded from the Distributions otherwise allocable to each Holder of an Allowed General Unsecured Claim, on a *pro rata* basis.

1.1.60    "Holder" means a holder of a Claim or Interest, or Trust Interest, as applicable.

1.1.61    "Impaired" means, with respect to any Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of Bankruptcy Code section 1124.

1.1.62    "Initial Distribution Date" means the Effective Date or as soon as reasonably practicable thereafter.

1.1.63    "Intercompany Claim" means any Allowed Claim arising under or in connection with the Prepetition Intercompany Loans, each of which is subordinated to all other Claims pursuant to Article III hereof.

1.1.64    "Interest" means, without limitation, any equity security in the Debtors that is of a kind specified in Bankruptcy Code section 101(16) and any options, warrants, puts, calls, subscriptions or other similar rights or other agreements, commitments, or outstanding securities obligating the Debtors to issue, transfer, purchase, redeem, or sell any shares of capital stock or other securities, any Claims arising out of any appraisal or dissenter's rights, any Claims arising from rescission of a purchase, sale or other acquisition of any common stock or other equity security (or any right, Claim, or interest in and to any common stock or equity security) of the Debtor, and any Claims for damages or any other relief arising from or related to any such purchase, sale, or other acquisition of such common stock or other equity security.

1.1.65    "Jurong" means Jurong Shipyard Pte, Ltd.

1.1.66    "Lien" has the meaning set forth in Bankruptcy Code section 101(37).

1.1.67    "Liquidating Agent" means [_____] or such other professional as may be identified in the Plan Supplement, its employees, and any successors under the Plan. Entry of the Confirmation Order shall constitute approval of the Liquidating Agent as a professional person pursuant to the applicable provisions of the Bankruptcy Code. When the context so requires, Liquidating Agent shall include the Estates and/or the Post-Confirmation Debtors.

1.1.68    "Liquidating Fund" means the fund into which Cash, the Liquidation Proceeds and the Retained Proceeds of each of the Debtors will be deposited for administration thereof in accordance with the Plan and the Liquidating Trust Agreement.

1.1.69    "Liquidating Trust Agreement" means that agreement, a final form of which will be included in the Plan Supplement, governing the Liquidating Agent and the administration of the Liquidating Fund.

1.1.70    "Liquidation Expenses" means the fees and expenses incurred by the Liquidating Agent arising from or related to performance of its obligations under the Plan and the Liquidating Trust Agreement, including, but not limited to, (i) the post-Effective Date costs and expenses of liquidating and winding-up the Post-Confirmation Debtors, (ii) the post-Effective Date costs and expenses of liquidating and distributing the Remaining Assets and (iii) the payment of the post-Effective Date compensation and expenses of the Liquidating Agent, including the fees and expenses of professional persons retained by the Liquidating Agent.

1.1.71    "Liquidation Proceeds" means (i) any Cash held by each of the Post-Confirmation Debtors as of the Effective Date, and (ii) any Cash received by the applicable Estate from any source, including, without limitation, Cash generated by (a) the sale of the Remaining Assets, and (b) the prosecution or settlement of the Causes of Action, less an appropriate amount of Retained Proceeds.

1.1.72    "Liquidator" means the Person designated pursuant to Singapore law to effect the winding-up of the PetroRig I, PetroRig II and PetroRig III corporate entities as provided for in the Plan.

1.1.73    "Loan Agreements" means each or all of the 9.75% Loan Agreement, the FRN Loan Agreement and the 10.85% Loan Agreement.

1.1.74    "LOG Claims" shall have the meaning as set forth in the LOG Claims Stipulation.

1.1.75    "LOG Claims Stipulation" means that certain Stipulation and Order Resolving the Claims of the Larsen Oil & Gas Entities, substantially in the form as attached hereto as Exhibit B and to be filed in the Plan Supplement. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the LOG Claims Stipulation pursuant to Bankruptcy Rule 9019.

1.1.76 "LOG Distribution" means an aggregate Distribution of $5,000,000 to be paid to the LOG Group on the Initial Distribution Date, in full and final satisfaction of the LOG Group Claims. The LOG Distribution shall be comprised of (i) the General Unsecured Claim Holder Contribution and (ii) the aggregate of $4,500,000 to be funded by the Debtors, based on an allocation of funding amongst the separate Debtors' Estates to be determined by the Debtors, in their sole discretion, prior to the Confirmation Date and set forth in the Plan Supplement. LOG UK shall be designated by the LOG Group to vote each of the LOG Group Claims in respect of the Plan and to receive the LOG Distribution and hold the LOG Distribution in trust for the benefit of each member of the LOG Group. For the avoidance of doubt, and notwithstanding anything herein or in the Plan Supplement to the contrary, Holders of Allowed LOG Group Claims shall not be entitled to receive Distributions totaling in excess of $5,000,000.

1.1.77 "LOG Group" means, collectively, Larsen Oil & Gas FZCO, Larsen Oil & Gas Ltd, Larsen Oil & Gas Pte Ltd, and Larsen Oil & Gas USA, LLC.

1.1.78 "LOG Group Claims" means the Claims of the members of the LOG Group against each of the Debtors, which shall be Allowed in the aggregate amount of $5,000,000, for which amount the Debtors shall be jointly and severally liable.

1.1.79 "LOG UK" means Larsen Oil & Gas Ltd.

1.1.80 "LOG Released Parties" shall have the meaning as set forth in the LOG Claims Stipulation.

1.1.81 "Officers and Directors" means all officers, directors, and employees of the Debtors serving in such capacity as of the Petition Date.

1.1.82 "Other Secured Claim" means any secured Claim, other than the 9.75% Bond Claims and FRN Bond Claims, including the (a) Postpetition Intercompany Loan, (b) prepetition loan in the amount of $470,000 from the FRN Bondholders to PetroRig I, PetroRig II and PetroRig III, pursuant to the Multiple-Draw Pre and Post Petition Term Loan Facility Term Sheet, dated as of May 15, 2009 and (c) postpetition loan in the amount of $55,000 from the FRN Trustee, on behalf of the FRN Bondholders, to PetroRig I, PetroRig II and PetroRig III pursuant to the *Interim Order Approving Emergency Postpetition Financing, Pending a Final Hearing, entered on May 22, 2009 and approved on a final basis by the Stipulated Final Order (I) Authorizing Use of Cash Collateral, (II) Providing for Intercompany Financing, (III) Approving the Authorized Amount on a Final Basis and (IV) Granting Replacement Liens, Adequate Protection and Superpriority Administrative Expense Priority to Prepetition Lenders*, entered by the Bankruptcy Court on August 6, 2009.

1.1.83 "Person" means a person as defined in Bankruptcy Code section 101(41) and includes, without limitation, a governmental unit, as defined in Bankruptcy Code section 101(27).

1.1.84 "Petition Date" means May 17, 2009.

1.1.85 "PetroMena" means PetroMena, ASA, the holder of certain Interests in the Debtors and its affiliates.

1.1.86    "PetroRig I" means PetroRig I Pte Ltd.

1.1.87    "PetroRig II" means PetroRig II Pte Ltd.

1.1.88    "PetroRig III" means PetroRig III Pte Ltd.

1.1.89    "Plan" means this Third Amended Joint Plan of Reorganization Filed by the Debtors, as the same may hereafter be amended, supplemented or modified, including the exhibits and schedules hereto and the Plan Supplement.

1.1.90    "Plan Supplement" means the compilation of documents and exhibits relevant to the implementation of the Plan, including but not limited to the Liquidating Trust Agreement and such other documents and exhibits that will be Filed no later than ten days prior to the deadline for filing objections to confirmation of the Plan set forth in the Disclosure Statement, and which may be amended, supplemented or modified through and including the Confirmation Date.

1.1.91    "Post-Confirmation Debtors" means each of the Debtors after the Effective Date. When the context so requires, Post-Confirmation Debtors shall include the Estates and/or the Liquidating Agent.

1.1.92    "Postpetition Contracts" means any postpetition contracts or leases to which the Debtors are a party (including Executory Contracts and Unexpired Leases previously assumed).

1.1.93    "Postpetition Intercompany Loan" means postpetition loans from PetroRig I to PetroRig II and PetroRig III pursuant to the Bankruptcy Court's *Corrected Stipulated Final Order (I) Approving Use of Cash Collateral Pursuant to Sections 105, 361, and 363 of the Bankruptcy Code, (II) Providing for Intercompany Financing Pursuant to Sections 105 and 364, (III) Approving the Authorized Amount on a Final Basis and (iv) Granting Replacement Liens, Adequate Protection and Superpriority Administrative Expenses Priority to the Prepetition Lenders*, dated September 8, 2009 and as amended by stipulations entered February 4, 2010, March 10, 2010, May 3, 2010, July 1, 2010, November 2, 2010, February 8, 2011 and May 18, 2011.

1.1.94    "Prepetition Intercompany Loans" means the unsecured prepetition loans from (i) PetroRig III to PetroRig I in the amount, as of the Petition Date, of $18,679,991.61, (ii) PetroRig II to PetroRig I in the amount, as of the Petition Date, of $1,531,477.62 and (iii) PetroRig III to PetroRig II, as of the Petition Date, in the amount of $8,821,164.24.

1.1.95    "Priority Non-Tax Claim" means a Claim entitled to priority under the provisions of Bankruptcy Code section 507(a); provided, however, Priority Non-Tax Claims do not include Administrative Expense Claims or Priority Tax Claims.

1.1.96    "Priority Tax Claim" means a Claim against the Debtors that is of a kind specified in Bankruptcy Code sections 502(i) and 507(a)(8).

1.1.97 "Professional Compensation" means (i) any amounts that the Bankruptcy Court allows pursuant to Bankruptcy Code section 330 as compensation earned, and reimbursement of expenses incurred, by professionals employed by the Debtors or the Committee and (ii) any amounts the Bankruptcy Court allows pursuant to Bankruptcy Code sections 503(b)(3) and (4).

1.1.98 "Record Holder" means the Holder of a Claim or Interest as of the Distribution Record Date.

1.1.99 "Released Parties" means, collectively, (i) the Debtors, (ii) the Liquidating Agent, (iii) the Committee, (iv) each member of the Committee (strictly in each member's capacity as a member of the Committee, and not in its individual capacity as a creditor of the Debtors, and except to the extent that any member of the Committee misuses or discloses any confidential or privileged information of the Debtors in violation of applicable confidentiality agreements), (v) Norsk Tillitsmann, ASA in its capacities as the Trustees, (vi) the Bondholders and (vii) any of the respective officers, directors, employees, consultants, agents, financial advisors, attorneys and other representatives of the foregoing, in each case solely in such capacity.

1.1.100 "Releasing Parties" means each of PetroRig I, PetroRig II and PetroRig III serving as of the Petition Date and each of their respective direct or indirect subsidiaries, current and former affiliates, current and former officers, directors, partners, employees, agents, representatives, financial advisors, professionals, accountants and attorneys, and each of their predecessors, successors, and assigns.

1.1.101 "Remaining Assets" means the assets of the Debtors as they exist on the Effective Date or thereafter, including, without limitation, Causes of Action or any other assets that are determined to be property of the Debtors, but excluding any assets that will be distributed on the Initial Distribution Date.

1.1.102 "Retained Proceeds" means the Disputed Claims Reserve, plus a reserved amount to pay accrued and otherwise anticipated pre-Effective Date costs and expenses including Administrative Expense Claims, and an aggregate amount, to be funded by each Debtor in individual amounts to be set forth in the Plan Supplement, of not less than $4,000,000 or such greater amount as is ordered by the Bankruptcy Court in the Confirmation Order, that shall be retained in the Liquidating Fund as a reserve to pay, among other things, the Liquidation Expenses. On the Final Distribution Date, any remaining Retained Proceeds shall be used to make a final distribution under the Plan; provided, however, the Liquidating Agent shall be entitled to retain up to $50,000 per Debtor for post-Final Distribution Date expenses, if any, relating to the dissolution of the Post-Confirmation Debtors.

1.1.103 "Rig I Proceeds" means the funds delivered to PetroRig I in connection with the sale of PetroRig I, pursuant to the settlement agreement by and among PetroRig I, the 9.75% Trustee and Jurong, dated as of June 3, 2009, approved by the Bankruptcy Court's *Order Authorizing and Approving Stipulation of Settlement and Dismissal*, dated June 4, 2009.

1.1.104  "Schedules" means, with respect to each of the Debtors, the Schedules of Assets and Liabilities Filed in their respective Chapter 11 Cases, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

1.1.105  "Trust Interest" means the beneficial interest in the Liquidating Fund that shall entitle the Holder thereof to receive, on a *pro rata* basis with other members of the applicable Class of Claims or Interests, its share of the Liquidation Proceeds, which interest shall be issued in three (3) series, corresponding to Classes PRI-6, PRII-7 and PRIII-6.

1.1.106  "Trustees" means, collectively, the 9.75% Trustee, the FRN Trustee and the 10.85% Trustee.

1.1.107  "Unclassified Claim" means any Priority Tax Claim or Administrative Expense Claim.

1.1.108  "Unexpired Lease" means any and all unexpired leases to which the Debtors are a party that are subject to assumption or rejection under Bankruptcy Code section 365.

1.1.109  "Unimpaired" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

1.1.110  "United States Trustee" means the United States Trustee for Region 2.

1.1.111  "Voting Deadline" means, with respect to Holders of Claims in Classes PRI-4, PRI-5, PRII-4, PRII-5, PRIII-3, PRIII-4, PRIII-5 and PRIII-6 and with respect to Holders of Interests in Class PRII-7, the last date on which all properly executed and completed Ballots must be actually received by the Debtors' agent with respect to the solicitation of votes to accept or reject the Plan.  The Voting Deadline is established by the Disclosure Statement Order.

1.1.112  "Voting Record Date" means, with respect to Holders of Claims in Classes PRI-4, PRI-5, PRII-4, PRII-5, PRIII-3, PRIII-4, PRIII-5 and PRIII-6 and with respect to Holders of Interests in Class PRII-7, the date as of which it is determined which such Holders of Claims or Interests are entitled to vote to accept or reject the Plan.  The Voting Record Date is established by the Disclosure Statement Order.

1.2  *Rules of Interpretation.*

For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (ii) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (iv) unless otherwise specified, all references herein to "ARTICLE" are references to articles hereof or hereto and are inserted for convenience of reference only and are

not intended to be part of or to affect the interpretation of the Plan; (v) captions and headings to articles of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (vi) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vii) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (viii) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such terms in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (ix) all references to docket numbers or documents filed in the Debtors' Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (ix) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Debtors' Chapter 11 Cases, unless otherwise stated; and (x) any immaterial effectuating provisions may be interpreted by the Post-Confirmation Debtors and the Liquidating Agent after the Effective Date in such a manner that is consistent with the overall purpose and intent of the Plan and without further Bankruptcy Court order.

1.3     *Time*.

Whenever the time for the occurrence or happening of an event as set forth in the Plan falls on a Saturday, Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order, then the time for the occurrence or happening of said event shall be extended to the next Business Day.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

2.1     *Summary*.

Pursuant to Bankruptcy Code section 1123(a)(1), Administrative Expense Claims, Professional Compensation Claims and Priority Tax Claims against the Debtors are not classified for purposes of voting on, or receiving Distributions under the Plan.  Holders of such Claims are not entitled to vote on the Plan.  All such Claims are instead treated separately in accordance with this ARTICLE II and in accordance with the requirements set forth in Bankruptcy Code section 1129(a)(9)(A).

2.2     *Administrative Expense Claims*.

2.2.1     Subject to the provisions of Bankruptcy Code sections 328, 330(a) and 331, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the later of (i) the Initial Distribution Date, (ii) the date on which such Claim becomes an Allowed Administrative Expense Claim, or as soon as practicable thereafter, or (iii) such other date as may be ordered by the Bankruptcy Court.

2.2.2    Except as otherwise provided in the Plan, any Person holding an Administrative Expense Claim shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty days after the Liquidating Agent provides notice by mail or by publication, in a form and manner approved by the Bankruptcy Court, of the occurrence of the Effective Date.  At the same time any Person Files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for the Liquidating Agent.  Any Person who fails to timely File and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claim from the Post-Confirmation Debtors or the Liquidating Agent.

2.3    *Professional Compensation and Reimbursement Claims.*

Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall File a final application for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within sixty days after the Effective Date or by such other deadline as may be fixed by the Bankruptcy Court.  If granted by the Bankruptcy Court, such Professional Compensation Claim shall be paid in full in Cash in such amounts as are Allowed by the Bankruptcy Court, on the later of (i) the Initial Distribution Date, (ii) the date on which such Claim becomes an Allowed Professional Compensation Claim, or as soon as practicable thereafter, or (iii) such other date as may be ordered by the Bankruptcy Court.  The Liquidating Agent is authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Confirmation Date in the ordinary course of its business and without the need for Bankruptcy Court approval.

2.4    *Priority Tax Claims.*

Each Holder of an Allowed Priority Tax Claim will be paid the full unpaid amount of such Allowed Priority Tax Claim in Cash on the later of (i) the Initial Distribution Date, (ii) the date on which such Claim becomes an Allowed Priority Tax Claim, or as soon as practicable thereafter, or (iii) such other date as may be ordered by the Bankruptcy Court.


**ARTICLE III**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

3.1    *Summary.*

The categories of Claims and Interests set forth below classify all Claims against and Interests in each of the Debtors for all purposes of the Plan.  The Debtors have not been substantively consolidated.  Except as otherwise provided in the Plan, all Claims against and Interests in each Debtor shall be satisfied solely from the proceeds of the respective Estate.  A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is classified in a particular Class regardless of whether the Claim or Interest is an Allowed Claim or Interest in that Class, or only asserted as such, but only to the extent that it has not been paid, released, disallowed or otherwise satisfied

before the Voting Record Date.  The treatment with respect to each Class of Claims and Interests provided for in this ARTICLE III shall be in full and complete satisfaction and release of such Claims and Interests.

The classification of Claims and Interests under each Debtor's Plan is as follows:

**PetroRig I:**

| Class | Designation | Impairment | Voting Rights |
|---|---|---|---|
| **PRI-1** | **Other Secured Claims** | **Unimpaired** | **Deemed to Accept** |
| **PRI-2** | **Priority Non-Tax Claims** | **Unimpaired** | **Deemed to Accept** |
| **PRI-3** | **9.75% Bond Claims** | **Unimpaired** | **Deemed to Accept** |
| **PRI-4** | **General Unsecured Claims** | **Impaired** | **Entitled to Vote** |
| **PRI-5** | **LOG Group Claim** | **Impaired** | **Entitled to Vote** |
| **PRI-6** | **Intercompany Claims** | **Impaired** | **Deemed to Accept** |
| **PRI-7** | **Interests** | **Impaired** | **Deemed to Reject** |

**PetroRig II:**

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| **PRII-1** | **Other Secured Claims** | **Unimpaired** | **Deemed to Accept** |
| **PRII-2** | **Priority Non-Tax Claims** | **Unimpaired** | **Deemed to Accept** |
| **PRII-3** | **9.75% Bond Claims** | **Unimpaired** | **Deemed to Accept** |
| **PRII-4** | **General Unsecured Claims** | **Impaired** | **Entitled to Vote** |
| **PRII-5** | **LOG Group Claim** | **Impaired** | **Entitled to Vote** |
| **PRII-6** | **Intercompany Claims** | **Impaired** | **Deemed to Accept** |
| **PRII-7** | **Interests** | **Impaired** | **Entitled to Vote** |

**PetroRig III:**

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| **PRIII-1** | **Other Secured Claims** | **Unimpaired** | **Deemed to Accept** |
| **PRIII-2** | **Priority Non-Tax Claims** | **Unimpaired** | **Deemed to Accept** |
| **PRIII-3** | **FRN Bond Claims** | **Impaired** | **Entitled to Vote** |
| **PRIII-4** | **General Unsecured Claims** | **Impaired** | **Entitled to Vote** |
| **PRIII-5** | **LOG Group Claim** | **Impaired** | **Entitled to Vote** |
| **PRIII-6** | **FRN Deficiency Claims** | **Impaired** | **Entitled to Vote** |
| **PRIII-7** | **Interests** | **Impaired** | **Deemed to Reject** |

**Classification and Treatment of PetroRig I Claims:**

3.2     *Class PRI-1 – Other Secured Claims.*

3.2.1     Classification:  Class PRI-1 consists of all Other Secured Claims against PetroRig I.

3.2.2     Impairment and Voting:  Class PRI-1 is an Unimpaired Class.  Each Holder of an Allowed Class PRI-1 Other Secured Claim is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f).

3.2.3     Distribution:  The legal, equitable and contractual rights of the Holders of Allowed Class PRI-1 Other Secured Claims are unaltered by the Plan.  Unless the Holder of such Allowed Class PRI-1 Other Secured Claim and PetroRig I or the Liquidating Agent, as applicable, agree to a different treatment, each Holder of an Allowed Class PRI-1 Other Secured Claim shall receive, at the sole option of PetroRig I or the Liquidating Agent, in full and final satisfaction of such Allowed Class PRI-1 Other Secured Claim, (i) payment in full in Cash on the later of (a) the Initial Distribution Date, (b) the date on which such Claim becomes an Allowed Class PRI-1 Other Secured Claim, or as soon as practicable thereafter, or (c) such other date as may be ordered by the Bankruptcy Court, or (ii) the collateral securing its Allowed Class PRI-1 Other Secured Claim on the later of (a) the Initial Distribution Date, (b) the date on which such Claim becomes an Allowed Class PRI-1 Other Secured Claim, or as soon as practicable thereafter, or (c) such other date as may be ordered by the Bankruptcy Court.

3.3     *Class PRI-2 – Priority Non-Tax Claims*.

3.3.1     Classification:   Class PRI-2 consists of all Priority Non-Tax Claims against PetroRig I.

3.3.2     Impairment and Voting: Class PRI-2 is an Unimpaired Class.  Each Holder of an Allowed Class PRI-2 Priority Non-Tax Claim is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f).

3.3.3     Distribution:  The legal, equitable and contractual rights of the Holders of Allowed Class PRI-2 Priority Non-Tax Claims are unaltered by the Plan.  Unless a Holder of such Allowed Class PRI-2 Priority Non-Tax Claim and PetroRig I or the Liquidating Agent, as applicable, agree to a different treatment, each Holder of an Allowed Class PRI-2 Priority Non-Tax Claim shall, in full and final satisfaction of such Allowed Class PRI-2 Priority Non-Tax Claim, be paid in full in Cash on the later of (i) the Initial Distribution Date, (ii) the date on which such Claim becomes an Allowed Class PRI-2 Priority Non-Tax Claim, or as soon as practicable thereafter, or (iii) such other date as may be ordered by the Bankruptcy Court.

3.4     *Class PRI-3 – 9.75% Bond Claims*.

3.4.1     Classification:   Class PRI-3 consists of the 9.75% Bond Claims against PetroRig I.

3.4.2     Allowance of Claims: The 9.75% Bond Claims shall be Allowed in the aggregate amount of $42,980,428.36, representing the aggregate amount of the 9.75% Bond Claims remaining as of August 15, 2011, plus $11,244.60 to accrue *per diem* from August 15, 2011 through the Initial Distribution Date.

3.4.3    Impairment and Voting:  Class PRI-3 is an Unimpaired Class.  Each Holder of an Allowed Class PRI-3 9.75% Bond Claim is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f).

3.4.4    Distribution:  The legal, equitable and contractual rights of the Holders of Allowed Class PRI-3 9.75% Bond Claims are unaltered by the Plan.  PetroRig I and PetroRig II are jointly and severally obligated to pay Holders of 9.75% Bond Claims.  To the extent not already paid in full, on the Initial Distribution Date the 9.75% Trustee for the benefit of the Holders of the Allowed PRI-3 9.75% Bond Claims, shall, in full and final satisfaction of such Allowed Class PRI-3 9.75% Bond Claim, receive payment in Cash of the aggregate Allowed Class PRI-3 9.75% Bond Claims from the available Rig I Proceeds.  For the avoidance of doubt, and notwithstanding anything herein or in the Plan Supplement to the contrary, Holders of Allowed PRI-3 9.75% Bond Claims shall not be entitled to receive Distributions totaling in excess of 100% of the aggregate Allowed 9.75% Bond Claims.

3.5    *Class PRI-4 – General Unsecured Claims*.

3.5.1    Classification:  Class PRI-4 consists of all General Unsecured Claims against PetroRig I.

3.5.2    Impairment and Voting:  Class PRI-4 is an Impaired Class.  Each Holder of an Allowed Class PRI-4 General Unsecured Claim is entitled to vote to accept or reject the Plan.

3.5.3    Distribution:    Each Holder of an Allowed Class PRI-4 General Unsecured Claim shall, in full and final satisfaction of such Allowed Class PRI-4 General Unsecured Claim, be paid the full principal amount of such Class PRI-4 General Unsecured Claim in Cash, without any interest thereon, subject to reduction on account of such Holder's *pro rata* share of the General Unsecured Claim Holder Contribution, on the later of (i) the Initial Distribution Date, (ii) the date on which such Claim becomes an Allowed Class PRI-4 General Unsecured Claim, or as soon as practicable thereafter, or (iii) such other date as may be ordered by the Bankruptcy Court.

3.6    *Class PRI-5 – LOG Group Claim*.

3.6.1    Classification:  Class PRI-5 consists of the LOG Group Claim against PetroRig I.

3.6.2    Allowance of Claims: The PRI-5 LOG Group Claim against PetroRig I shall be Allowed in the amount of $5,000,000 pursuant to the LOG Claims Stipulation.

3.6.3    Impairment and Voting:  Class PRI-5 is an Impaired Class.  An authorized designee of the LOG Group shall be entitled to vote to accept or reject the Plan on behalf of Holders of the Allowed Class PRI-5 LOG Group Claim.

3.6.4    Distribution:  LOG UK, on behalf of the Holders of the Allowed Class PRI-5 LOG Group Claim shall, in full and final satisfaction of such PRI-5 LOG Group Claim,

receive cash on the Initial Distribution Date equal to the LOG Distribution, (i) $500,000 of which represents the General Unsecured Claim Holder Contribution and (ii) $4,500,000 of which represents the joint and several obligation of the Debtors, for an aggregate settlement amount of $5,000,000.  For the avoidance of doubt, and notwithstanding anything herein or in the Plan Supplement to the contrary, Holders of Allowed LOG Group Claims shall not be entitled to receive Distributions totaling in excess of $5,000,000.

3.7     *Class PRI-6– Intercompany Claims.*

3.7.1     Classification:  Class PRI-6 consists of the Intercompany Claims against PetroRig I.

3.7.2     Allowance of Claims: The Class PRI-6 Intercompany Claims shall be Allowed in the aggregate amount of $20,211,469.23, representing the full principal amount of such Class PRI-6 Intercompany Claims as of the Petition Date, without any interest thereon.

3.7.3     Impairment and Voting:  Class PRI-6 is an Impaired Class.  As proponents of the Plan, each Holder of an Allowed Class PRI-6 Intercompany Claim shall be conclusively deemed to have accepted the Plan.

3.7.4     Distribution:  On the Initial Distribution Date, each Holder of an Allowed Class PRI-6 Intercompany Claim shall receive Class PRI-6 Trust Interests, on account of such Holder's Allowed Class PRI-6 Intercompany Claim, entitling such Holder to receive its *pro rata* portion, with other Holders of Class PRI-6 Intercompany Claims, of Distributions  of any available Liquidation Proceeds of the PetroRig I Estate, on each Distribution Date up to and including the Final Distribution Date, subject to payment in full of Allowed Claims in Class PRI-1, PRI-2, PRI-3, PRI-4 and PRI-5 and payment of the Liquidation Expenses of the PetroRig I Estate.

3.8     *Class PRI-7 – Interests.*

3.8.1     Classification:  Class PRI-7 consists of all Interests in PetroRig I.

3.8.2     Impairment and Voting:  Holders of Interests in Class PRI-7 will not receive or retain any property under the Plan.  Accordingly, pursuant to Bankruptcy Code section 1126(g), the Holders of Class PRI-7 Interests are deemed to reject the Plan, and, therefore, are not entitled to vote to accept or reject the Plan.

3.8.3     Distribution:  Holders of Class PRI-7 Interests shall not receive any Distribution on account of such Interests.  All PRI-7 Interests shall survive the Effective Date, and shall be cancelled upon the dissolution of each Post-Confirmation Debtor as set forth in section 6.15 of the Plan.

**Classification and Treatment of PetroRig II Claims:**

 3.9  *Class PRII-1 – Other Secured Claims.*

   3.9.1  Classification: Class PRII-1 consists of all Other Secured Claims against PetroRig II.

   3.9.2  Impairment and Voting: Class PRII-1 is an Unimpaired Class. Each Holder of an Allowed Class PRII-1 Other Secured Claim is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f).

   3.9.3  Distribution: The legal, equitable and contractual rights of the Holders of Allowed Class PRII-1 Other Secured Claims are unaltered by the Plan. Unless the Holder of such Allowed Class PRII-1 Other Secured Claim and PetroRig II or the Liquidating Agent, as applicable, agree to a different treatment, each Holder of an Allowed Class PRII-1 Other Secured Claim shall receive, at the sole option of PetroRig II or the Liquidating Agent, in full and final satisfaction of such Allowed Class PRII-1 Other Secured Claim, (i) payment in full in Cash on the later of (a) the Initial Distribution Date, (b) the date on which such Claim becomes an Allowed Class PRII-1 Other Secured Claim, or as soon as practicable thereafter, or (c) such other date as may be ordered by the Bankruptcy Court, or (ii) the collateral securing its Allowed Class PRII-1 Other Secured Claim on the later of (a) the Initial Distribution Date, (b) the date on which such Claim becomes an Allowed Class PRII-1 Other Secured Claim, or as soon as practicable thereafter, or (c) such other date as may be ordered by the Bankruptcy Court.

 3.10  *Class PRII-2 – Priority Non-Tax Claims.*

   3.10.1  Classification: Class PRII-2 consists of all Priority Non-Tax Claims against PetroRig II.

   3.10.2  Impairment and Voting: Class PRII-2 is an Unimpaired Class. Each Holder of an Allowed Class PRII-2 Priority Non-Tax Claim is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f).

   3.10.3  Distribution: The legal, equitable and contractual rights of the Holders of Allowed Class PRII-2 Priority Non-Tax Claims are unaltered by the Plan. Unless a Holder of such Allowed Class PRII-2 Priority Non-Tax Claim and PetroRig II or the Liquidating Agent, as applicable, agree to a different treatment, each Holder of an Allowed Class PRII-2 Priority Non-Tax Claim shall, in full and final satisfaction of such Allowed Class PRII-2 Priority Non-Tax Claim, be paid in full in Cash on the later of (i) the Initial Distribution Date, (ii) the date on which such Claim becomes an Allowed Class PRII-2 Priority Non-Tax Claim, or as soon as practicable thereafter, or (iii) such other date as may be ordered by the Bankruptcy Court.

 3.11  *Class PRII-3 – 9.75% Bond Claims.*

   3.11.1  Classification: Class PRII-3 consists of the 9.75% Bond Claims against PetroRig II.

3.11.2    Allowance of Claims: The 9.75% Bond Claims shall be Allowed in the aggregate amount of $42,980,428.36, representing the aggregate amount of the 9.75% Bond Claims remaining as of August 15, 2011, plus $11,244.60 to accrue *per diem* from August 15, 2011 through the Initial Distribution Date.

3.11.3    Impairment and Voting:  Class PRII-3 is an Unimpaired Class.  Each Holder of an Allowed Class PRII-3 9.75% Bond Claim is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f).

3.11.4    Distribution:  The legal, equitable and contractual rights of the Holders of Allowed Class PRII-3 9.75% Bond Claims are unaltered by the Plan.  PetroRig I and PetroRig II are jointly and severally obligated to pay Holders of 9.75% Bond Claims.  To the extent not already paid in full, on the Initial Distribution Date the 9.75% Trustee for the benefit of the Holders of the Allowed PRII-3 9.75% Bond Claims, shall, in full and final satisfaction of such Allowed Class PRII-3 9.75% Bond Claim, receive payment in Cash of the aggregate Allowed Class PRII-3 9.75% Bond Claims from the available Construction Contract II Proceeds.  For the avoidance of doubt, and notwithstanding anything herein or in the Plan Supplement to the contrary, Holders of Allowed 9.75% Bond Claims shall not be entitled to receive Distributions totaling in excess of 100% of the aggregate Allowed 9.75% Bond Claims.

3.12    *Class PRII-4 – General Unsecured Claims.*

3.12.1    Classification:  Class PRII-4 consists of all General Unsecured Claims against PetroRig II.

3.12.2    Impairment and Voting:  Class PRII-4 is an Impaired Class.  Each Holder of an Allowed Class PRII-4 General Unsecured Claim is entitled to vote to accept or reject the Plan.

3.12.3    Distribution:  Each Holder of an Allowed Class PRII-4 General Unsecured Claim shall, in full and final satisfaction of such Allowed Class PRII-4 General Unsecured Claim, be paid the full principal amount of such Class PRII-4 General Unsecured Claim in Cash, without any interest thereon, subject to reduction on account of such Holder's *pro rata* share of the General Unsecured Claim Holder Contribution, on the later of (i) the Initial Distribution Date, (ii) the date on which such Claim becomes an Allowed Class PRII-4 General Unsecured Claim, or as soon as practicable thereafter, or (iii) such other date as may be ordered by the Bankruptcy Court.

3.13    *Class PRII-5 – LOG Group Claim.*

3.13.1    Classification:  Class PRII-5 consists of the LOG Group Claim against PetroRig II.

3.13.2    Allowance of Claims: The PRII-5 LOG Group Claim against PetroRig II shall be Allowed in the amount of $5,000,000 pursuant to the LOG Claims Stipulation.

3.13.3 Impairment and Voting: Class PRII-5 is an Impaired Class. An authorized designee of the LOG Group shall be entitled to vote to accept or reject the Plan on behalf of Holders of the Allowed Class PRII-5 LOG Group Claim.

3.13.4 Distribution: LOG UK, on behalf of the Holders of the Allowed Class PRII-5 LOG Group Claim shall, in full and final satisfaction of such PRII-5 LOG Group Claim, receive cash on the Initial Distribution Date equal to the LOG Distribution, (i) $500,000 of which represents the General Unsecured Claim Holder Contribution and (ii) $4,500,000 of which represents the joint and several obligation of the Debtors, for an aggregate settlement amount of $5,000,000. For the avoidance of doubt, and notwithstanding anything herein or in the Plan Supplement to the contrary, Holders of Allowed LOG Group Claims shall not be entitled to receive Distributions totaling in excess of $5,000,000.

3.14   *Class PRII-6– Intercompany Claims*.

3.14.1 Classification: Class PRII-6 consists of the Intercompany Claims against PetroRig II.

3.14.2 Allowance of Claims: The Class PRII-6 Intercompany Claims shall be Allowed in the aggregate amount of $8,821,164.24, representing the full principal amount of such Class PRII-6 Intercompany Claims as of the Petition Date, without any interest thereon.

3.14.3 Impairment and Voting: Class PRII-6 is an Impaired Class. As proponents of the Plan, each Holder of an Allowed Class PRII-6 Intercompany Claim shall be conclusively deemed to have accepted the Plan.

3.14.4 Distribution: Each Holder of an Allowed Class PRII-6 Intercompany Claim shall, in full and final satisfaction of such Allowed Class PRII-6 Intercompany Claim, be paid in full in Cash, without any interest, on the (i) the Initial Distribution Date, or as soon as practicable thereafter, or (ii) such other date as may be ordered by the Bankruptcy Court.

3.15   *Class PRII-7 – Interests*.

3.15.1 Classification: Class PRII-7 consists of all Interests in PetroRig II.

3.15.2 Impairment and Voting: Class PRII-7 is an Impaired Class. Each Holder of an Allowed Class PRII-7 Interest is entitled to vote to accept or reject the Plan.

3.15.3 Distribution: On the Initial Distribution Date, each Holder of an Allowed Class PRII-7 Interest shall receive Class PRII-7 Trust Interests on account of such Holder's Allowed Class PRII-7 Interest, entitling such Holder to receive its *pro rata* portion, with other Holders of such Class PRII-7 Trust Interests, of Distributions of any available Liquidation Proceeds of the PetroRig II Estate, on each Distribution Date up to and including the Final Distribution Date, subject to payment in full of Allowed Claims in Class PRII-1, PRII-2, PRII-3, PRII-4, PRII-5 and PRII-6 and payment of the Liquidation Expenses of the PetroRig II Estate. All PRII-7 Interests shall survive the Effective Date, and shall be cancelled upon the dissolution of each Post-Confirmation Debtor, as set forth in section 6.15 of the Plan.

**Classification and Treatment of PetroRig III Claims:**

3.16  *Class PRIII-1 – Other Secured Claims.*

3.16.1  Classification:  Class PRIII-1 consists of all Other Secured Claims against PetroRig III.

3.16.2  Impairment and Voting:  Class PRIII-1 is an Unimpaired Class.  Each Holder of an Allowed Class PRIII-1 Other Secured Claim is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f).

3.16.3  Distribution:  The legal, equitable and contractual rights of the Holders of Allowed Class PRIII-1 Other Secured Claims are unaltered by the Plan.  Unless the Holder of such Allowed Class PRIII-1 Other Secured Claim and PetroRig III or the Liquidating Agent, as applicable, agree to a different treatment, each Holder of an Allowed Class PRIII-1 Other Secured Claim shall receive, at the sole option of PetroRig III or the Liquidating Agent, in full and final satisfaction of such Allowed Class PRIII-1 Other Secured Claim, (i) payment in full in Cash on the later of (a) the Initial Distribution Date, (b) the date on which such Claim becomes an Allowed Class PRIII-1 Other Secured Claim, or as soon as practicable thereafter, or (c) such other date as may be ordered by the Bankruptcy Court, or (ii) the collateral securing its Allowed Class PRIII-1 Other Secured Claim on the later of (a) the Initial Distribution Date, (b) the date on which such Claim becomes an Allowed Class PRIII-1 Other Secured Claim, or as soon as practicable thereafter, or (c) such other date as may be ordered by the Bankruptcy Court.

3.17  *Class PRIII-2 – Priority Non-Tax Claims.*

3.17.1  Classification:  Class PRIII-2 consists of all Priority Non-Tax Claims against PetroRig III.

3.17.2  Impairment and Voting: Class PRIII-2 is an Unimpaired Class.  Each Holder of an Allowed Class PRIII-2 Priority Non-Tax Claim is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f).

3.17.3  Distribution:  The legal, equitable and contractual rights of the Holders of Allowed Class PRIII-2 Priority Non-Tax Claims are unaltered by the Plan.  Unless a Holder of such Allowed Class PRIII-2 Priority Non-Tax Claim and PetroRig III or the Liquidating Agent, as applicable, agree to a different treatment, each Holder of an Allowed Class PRIII-2 Priority Non-Tax Claim shall, in full and final satisfaction of such Allowed Class PRIII-2 Priority Non-Tax Claim, be paid in full in Cash on the later of (i) the Initial Distribution Date, (ii) the date on which such Claim becomes an Allowed Class PRIII-2 Priority Non-Tax Claim, or as soon as practicable thereafter, or (iii) such other date as may be ordered by the Bankruptcy Court.

3.18  *Class PRIII-3 – FRN Bond Claims.*

3.18.1  Classification:  Class PRIII-3 consists of the FRN Bond Claims against PetroRig III.

3.18.2　Allowance of Claims: The FRN Bond Claims shall be Allowed in the aggregate amount of $40,000,000.00.

3.18.3　Impairment and Voting: Class PRIII-3 is an Impaired Class.　Each Holder of an Allowed Class PRIII-3 FRN Bond Claim is entitled to vote to accept or reject the Plan.

3.18.4　Distribution:　On the Initial Distribution Date, the FRN Trustee, for the benefit of the Holders of Allowed Class PRIII-3 FRN Bond Claims, shall, in full and final satisfaction of such Allowed Class PRIII-3 FRN Bond Claim, (i) receive payment in Cash of all available Construction Contract III Proceeds and (ii) be granted the Class PRIII-6 Deficiency Claims.

3.19　*Class PRIII-4– General Unsecured Claims.*

3.19.1　Classification:　Class PRIII-4 consists of all General Unsecured Claims against PetroRig III.

3.19.2　Impairment and Voting:　Class PRIII-4 is an Impaired Class.　Each Holder of an Allowed Class PRIII-4 General Unsecured Claim is entitled to vote to accept or reject the Plan.

3.19.3　Distribution:　Each Holder of an Allowed Class PRIII-4 General Unsecured Claim shall, in full and final satisfaction of such Allowed Class PRIII-4 General Unsecured Claim, be paid the full principal amount of such Class PRIII-4 General Unsecured Claim in Cash, without any interest thereon, subject to reduction on account of such Holder's *pro rata* share of the General Unsecured Claim Holder Contribution, on the later of (i) the Initial Distribution Date, (ii) the date on which such Claim becomes an Allowed Class PRIII-4 General Unsecured Claim, or as soon as practicable thereafter, or (iii) such other date as may be ordered by the Bankruptcy Court.

3.20　*Class PRIII-5 – LOG Group Claim.*

3.20.1　Classification:　Class PRIII-5 consists of the LOG Group Claim against PetroRig III.

3.20.2　Allowance of Claims: The PRIII-5 LOG Group Claim against PetroRig III shall be Allowed in the amount of $5,000,000 pursuant to the LOG Claims Stipulation.

3.20.3　Impairment and Voting:　Class PRIII-5 is an Impaired Class.　An authorized designee of the LOG Group shall be entitled to vote to accept or reject the Plan on behalf of Holders of the Allowed Class PRIII-5 LOG Group Claim.

3.20.4　Distribution:　LOG UK, on behalf of the Holders of the Allowed Class PRIII-5 LOG Group Claim shall, in full and final satisfaction of such PRIII-5 LOG Group Claim, receive cash on the Initial Distribution Date equal to the LOG Distribution, (i) $500,000 of which represents the General Unsecured Claim Holder Contribution and (ii) $4,500,000 of which represents the joint and several obligation of the Debtors, for an aggregate settlement

amount of $5,000,000.  For the avoidance of doubt, and notwithstanding anything herein or in the Plan Supplement to the contrary, Holders of Allowed LOG Group Claims shall not be entitled to receive Distributions totaling in excess of $5,000,000.

### 3.21    *Class PRIII-6 – FRN Deficiency Claims*

3.21.1    Classification:  Class PRIII-6 consists of the Deficiency Claims against PetroRig III.

3.21.2    Impairment and Voting:  Class PRIII-6 is an Impaired Class.  Each Holder of an Allowed Class PRIII-6 FRN Deficiency Claim is entitled to vote to accept or reject the Plan.

3.21.3    Distribution:  On the Initial Distribution Date, each Holder of an Allowed Class PRIII-6 FRN Deficiency Claim shall receive Class PRIII-6 Trust Interests on account of such Holder's Allowed Class PRIII-6 FRN Deficiency Claim, entitling such Holder to receive its *pro rata* portion, with other Holders of such Class PRIII-6 Deficiency Claims, of Distributions of any available Liquidation Proceeds of the PetroRig III Estate, on each Distribution Date up to and including the Final Distribution Date, subject to payment in full of Allowed Claims in Class PRIII-1, PRIII-2, PRIII-3, PRIII-4 and PRIII-5 and payment of the Liquidation Expenses of the PetroRig III Estate.

### 3.22    *Class PRIII-7 – Interests*.

3.22.1    Classification:  Class PRIII-7 consists of all Interests in PetroRig III.

3.22.2    Impairment and Voting:  Holders of Interests in Class PRIII-7 will not receive or retain any property under the Plan.  Accordingly, pursuant to Bankruptcy Code section 1126(g), the Holders of Class PRIII-7 Interests are deemed to reject the Plan, and, therefore, are not entitled to vote to accept or reject the Plan.

3.22.3    Distribution:  Holders of Class PRIII-7 Interests shall not receive any Distribution on account of such Interests.  All PRIII-7 Interests shall survive the Effective Date, and shall be cancelled upon the dissolution of each Post-Confirmation Debtor, as set forth in section 6.15 of the Plan.

## ARTICLE IV
## IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED; ACCEPTANCE OR REJECTION OF THE PLAN

### 4.1    *Deemed Acceptance of Plan*.

Classes PRI-1, PRI-2, PRI-3, PRII-1, PRII-2, PRII-3, PRIII-1 and PRIII-2 are Unimpaired under the Plan.  Accordingly, pursuant to Bankruptcy Code section 1126(f), Classes PRI-1, PRI-2, PRI-3, PRII-1, PRII-2, PRII-3, PRIII-1 and PRIII-2 are deemed to accept the Plan and are not entitled to vote to accept or reject the Plan.  As proponents of the Plan, the Holders of Intercompany Claims in Classes PRI-6 and PRII-6 are deemed to accept the Plan.

4.2     *Deemed Rejection of Plan.*

The Holders of Interests in Classes PRI-7 and PRIII-7 will not receive or retain any property under the Plan.   Accordingly, pursuant to Bankruptcy Code section 1126(g), the Holders of Interests in Classes PRI-7 and PRIII-7 are deemed to reject the Plan, and, therefore, are not entitled to vote to accept or to reject the Plan.

4.3     *Nonconsensual Confirmation.*

As a result of the deemed rejection of the Interests in Classes PRI-7 and PRIII-7, the Debtors intend to request that the Bankruptcy Court confirm the Plan under Bankruptcy Code section 1129(b).

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1     *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, any and all Executory Contracts or Unexpired Leases of the Debtors will be deemed rejected in accordance with the provisions and requirements of Bankruptcy Code sections 365 and 1123, except those Executory Contracts or Unexpired Leases that have been previously rejected or assumed by the Debtor pursuant to a Final Order of the Bankruptcy Court.  For the avoidance of doubt, the Loan Agreements are not executory contracts and shall be treated as specified in section 6.15 of the Plan.

5.2     *Claims Based on Rejection of Executory Contracts, Unexpired Leases.*

All proofs of claim with respect to Claims arising from the rejection of Executory Contracts, Unexpired Leases or Postpetition Contracts, pursuant to the Plan, if any, must be Filed and served upon counsel for the Liquidating Agent within thirty days after the later of (a) the Effective Date and (b) the effective date of the rejection of the Executory Contracts, Unexpired Leases or Postpetition Contracts, or such other date as is specified in any order authorizing the rejection of particular Executory Contracts, Unexpired Leases or Postpetition Contracts.  Any Claims arising from the rejection of Executory Contracts, Unexpired Leases or Postpetition Contracts that become Allowed Claims will be classified and shall be treated as Class PRI-4 Claims, Class PRII-4 Claims or Class PRIII-4 Claims, as applicable.  Any Claims arising from the rejection of Executory Contracts, Unexpired Leases or Postpetition Contracts not Filed within the time required by this section 5.2 will be forever barred from assertion against the Debtors, the Estates, the Post-Confirmation Debtors, the Liquidating Agent and the Liquidating Fund and their respective Remaining Assets, unless otherwise ordered by the Bankruptcy Court or provided in the Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF PLAN

6.1     *Liquidating Fund.*

Except as otherwise provided in the Plan, all property of the Debtors and their Estates, including any Cash and the Remaining Assets, shall vest automatically in the Liquidating Fund on the Effective Date, free and clear of all Liens, Claims, Interests and encumbrances and without the need for the execution or delivery of any instruments of assignment, for the express purpose of, among other things, enabling the Liquidating Agent to make Distributions to Holders of Allowed Claims and Trust Interests pursuant to the terms and conditions of the Plan. The Liquidating Agent shall be vested with all rights and remedies of the Debtors and the Post-Confirmation Debtors with respect to the Remaining Assets, including the right to administer, liquidate, prosecute, settle and enforce any such rights and remedies. On the Effective Date, before any Distributions are made pursuant to the Plan, each Debtor shall contribute its share of the Retained Proceeds to the Liquidating Fund. The Liquidating Agent shall maintain accurate records of all Cash and Liquidation Proceeds in the Liquidating Fund as they relate to each Debtor, so that all transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, the books and records.

6.2     *Execution of the Liquidating Trust Agreement.*

On the Effective Date, the Liquidating Trust Agreement shall be executed and the Debtors shall be authorized to take all other necessary steps to establish the Liquidating Fund, which shall liquidate the assets of the Liquidating Fund for the benefit of Holders of Trust Interests against each respective Estate and in accordance with the Plan and the Bankruptcy Code. In the event of any conflict between the terms of this ARTICLE VI and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall govern.

6.3     *Purpose of the Liquidating Fund.*

The Liquidating Fund shall be established to allow the Liquidating Agent to perform its duties in accordance with the Liquidating Trust Agreement and the Plan.

6.4     *Trust Interests.*

On the Initial Distribution Date, Holders of Allowed Claims or Interests in Classes PRI-6, PRII-7 and PRIII-6 will receive notification from the Liquidating Agent as to the number and type of Trust Interests to be allocated to such Holder on account of such Holder's Allowed Claim or Interest in accordance with ARTICLE III of the Plan. The Trust Interests will not be certificated, but, rather, will be reflected through book entries made by the Liquidating Agent.

6.5     *Appointment of the Liquidating Agent.*

The Debtors shall appoint the Liquidating Agent, who shall be retained effective as of the Effective Date. The name of the Liquidating Agent shall be disclosed at or prior to the Confirmation Hearing. The Liquidating Agent shall, in accordance with the Liquidating Trust Agreement, serve in such capacity through the earlier of (i) the date the Liquidating Fund is

dissolved and (ii) the date on which the Liquidating Agent resigns, is terminated or otherwise becomes unable to serve as such; provided, however, that in the event that the Liquidating Agent resigns, is terminated or becomes unable to serve, the directors of the Liquidating Fund shall have the right to select a successor who shall be appointed as the Liquidating Agent and shall serve in such capacity until the Liquidating Fund is dissolved or until such Liquidating Agent resigns, is replaced or terminated.

6.6    *Continued Corporate Existence*.

After the Final Distribution Date, a resolution for voluntary winding up will be passed or an application to wind-up each of the Post-Confirmation Debtors' affairs will be filed with a court of competent jurisdiction or appropriate authority.  Until a resolution is passed or an order or comparable decree granting such winding-up application is made, the Post-Confirmation Debtors will continue to exist as separate corporate entities, with all of the powers attendant thereto, under applicable law.

Upon the passing of such a resolution  or the making of such an order or comparable decree granting the wind-up application for each Post-Confirmation Debtor, the Liquidating Agent shall file a certification of dissolution with the Bankruptcy Court on behalf of the applicable Post-Confirmation Debtor and the Existing Securities and any Certificates evidencing or creating any ownership interest in the Debtors shall be deemed to be fully and finally cancelled pursuant to section 6.15 of the Plan.

6.7    *Powers and Duties of the Liquidating Agent*.

As set forth in more detail in the Liquidating Trust Agreement, the responsibilities of the Liquidating Agent shall include, but shall not be limited to: (i) winding-up of the Post-Confirmation Debtors' affairs, including making the Distributions contemplated herein, (ii) liquidating any Remaining Assets in a commercially reasonable manner, (iii) maximizing the recovery for Holders of Trust Interests; (iv) investigating, enforcing and prosecuting any Causes of Action, (v) analyzing Claims, and objections thereto, and settling, compromising, disputing, and prosecuting Disputed Claims, as applicable, (vi) administering the Plan, and (vii) filing appropriate tax returns, each in the exercise of its fiduciary obligations.  The Liquidating Agent shall be authorized, without the necessity of obtaining approval from the Bankruptcy Court or providing notice to any party in interest, to (a) retain such professionals as are necessary and appropriate in furtherance of the fiduciary obligations of the Liquidating Fund and the Liquidating Agent and (b) invest the proceeds of the Liquidating Fund (including any earnings or proceeds) as permitted by Bankruptcy Code section 345 or as otherwise approved by the Bankruptcy Court.

6.7.1    Sales of Remaining Assets. On and after the Effective Date, the Liquidating Agent shall be authorized to liquidate and sell all Remaining Assets.  The Liquidating Agent shall be authorized to consummate such liquidations and sales without the necessity of obtaining approval from the Bankruptcy Court or providing notice to any party in interest if the aggregate purchase price for the Remaining Assets to be sold in connection with a particular transaction is less than or equal to $5,000,000; provided, however, the Liquidating Agent shall have the right, in its sole discretion, to seek and obtain Bankruptcy Court approval of

any such sale transaction if the Liquidating Agent believes it is in the best interests of the Estate and creditors to do so. If the aggregate purchase price in connection with a particular sale transaction exceeds $5,000,000, then Bankruptcy Court approval (following Designated Notice) shall be required. The Liquidating Agent shall also have the authority, if appropriate in its sole discretion and following Designated Notice, to abandon any Remaining Assets that cannot be liquidated or sold in a cost effective manner or that are of inconsequential value.

6.7.2    <u>Maintenance of Bank Accounts and Distribution of Liquidation Proceeds</u>. The Liquidating Agent shall be authorized to disburse the Liquidation Proceeds to the Holders of Trust Interests and otherwise in accordance with the terms of the Plan. All Liquidation Proceeds and Retained Proceeds shall be held in the Liquidating Fund for the benefit of Holders of Disputed Claims and Trust Interests in one or more separate bank or other depository accounts or investment accounts, in accordance with section 345 of the Bankruptcy Code. The Liquidating Agent shall be entitled to use the Debtors' bank accounts that are in existence as of the Effective Date and shall be authorized to open such other bank or depository accounts for the Liquidating Fund and the Post-Confirmation Debtors as may be necessary or appropriate in its discretion, to enable it to carry out the provisions of the Plan (<u>provided</u> <u>that</u>, any bank account opened by the Liquidating Agent shall be at a financial institution on the U.S. Trustee's list of Authorized Bank Depositories under section 345 of the Bankruptcy Code). The Liquidating Agent may, from time to time, invest Liquidation Proceeds and Retained Proceeds in certificates of deposit, treasury bills, money market accounts or other short term investments, consistent with section 345 of the Bankruptcy Code. All interest earned thereon shall be retained for Distribution to the Holders of Trust Interests pursuant to the Plan. The Liquidating Agent shall prepare and maintain an adequate set of financial books, records and/or databases so as to enable the Liquidating Agent to accurately track the Claims and Interests asserted against the Estate and the amounts paid to each Holder of an Allowed Claim or Trust Interest pursuant to the terms of the Plan; <u>provided</u> <u>that</u>, the Liquidating Agent also shall be entitled to use the Debtors' existing books and records, as appropriate. On the Initial Distribution Date and each subsequent Distribution Date (or as soon thereafter as is reasonably practicable), the Liquidating Agent shall make Distributions to the Holders of Trust Interests in accordance with the terms of the Plan. The Liquidating Agent will continue to make Distributions until all the Liquidation Proceeds, including the Retained Proceeds, have been distributed to Holders of Allowed Claims or Trust Interests in accordance with the terms of the Plan.

6.8    *Directors and Officers of Post-Confirmation Debtors/Liquidating Fund.*

On the Effective Date, or as soon as possible thereafter, consistent with applicable law, the authority, power and incumbency of the persons then acting as Singapore non-resident officers and directors of each of the Debtors shall be terminated and all such officers and directors shall be deemed to have resigned as officers and directors.

Following the passing of a resolution for the voluntary winding up of each of the Post-Confirmation Debtors or the issuance of the winding-up order in accordance with section 6.6 of the Plan, and consistent with applicable law, upon the appointment of the Liquidator, (i) the authority, power and incumbency of the persons then acting as Singapore resident officers or directors of each of the Post-Confirmation Debtors shall be terminated and all such officers and

directors shall be deemed to have resigned as such and (ii) the Liquidator shall exercise his powers and carry out his duties in accordance with the laws of Singapore.

6.9     *Post Effective Date Professional Fees and Expenses.*

From and after the Effective Date, the attorneys for the Debtors, the attorneys for the Committee and other professionals retained in the Chapter 11 Cases may, from time to time, provide legal and other professional services in connection with the Plan as requested by the Liquidating Agent.  Fees for such services may be paid without further application to the Bankruptcy Court within ten days after submission of an invoice to the Liquidating Agent.  If the Liquidating Agent disputes any amount of such an invoice, and such dispute remains unresolved for more than twenty days from the date of such invoice, the Liquidating Agent may refuse to pay the disputed invoice, provided, however, that the affected professional may file an application for allowance of the disputed invoice with the Bankruptcy Court on ten days' notice to the Liquidating Agent.  After a hearing before the Bankruptcy Court, the fees and expenses reflected in the disputed invoice shall be paid in the amounts fixed by the Bankruptcy Court pursuant to a Final Order thereof.

6.10     *Post Effective Date Fees and Expenses.*

From and after the Effective Date, the Liquidating Agent shall, in the ordinary course of business and without the necessity of Bankruptcy Court approval, pay the reasonable fees and expenses, including the fees and charges asserted against the Debtors' or Post-Confirmation Debtors' Estates under section 1930 of title 28 of the United States Code, related to implementation and consummation of the Plan, provided, however, that post-Effective Date professional fees shall be paid in accordance with the procedures set forth in section 6.9 of the Plan.  Any dispute with respect to such fees and expenses will be resolved by the Bankruptcy Court.

6.11     *Fiduciary Duties of the Liquidating Agent.*

The Liquidating Agent shall act in a fiduciary capacity for the interests of all Holders of Trust Interests.

6.12     *Dissolution of the Liquidating Fund.*

The Liquidating Fund shall be dissolved no later than three years from the Effective Date unless the Bankruptcy Court, upon a motion within the six month period prior to the third anniversary (or the end of any extension granted by the Bankruptcy Court), determines that a fixed period extension not to exceed three years, together with any prior extension is necessary to facilitate or complete recovery and liquidation of the Remaining Assets.  After (a) the Distribution of all Cash pursuant to the Plan, (b) the filing by or on behalf of the Post-Confirmation Debtors of a certificate of dissolution with the Bankruptcy Court in accordance with this section 6.12, and (c) the taking of all necessary actions to effectuate the closing of the Chapter 11 Cases, the Post-Confirmation Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions, provided, however, that the Liquidating Agent shall file with the appropriate jurisdiction, a certificate of dissolution or its equivalent for each of the Post-Confirmation Debtors.  Upon the Distribution of all the Liquidation Proceeds,

the Liquidating Agent shall take all necessary steps to effect the dissolution of the Liquidating Fund.

6.13    *Federal Income Tax Treatment.*

6.13.1    <u>General</u>.  If possible, the Liquidating Fund will be structured for federal income tax purposes as a "liquidating trust" as defined in Treasury Regulations section 301.7701-4(d) according to the guidelines established by the Internal Revenue Service in Rev. Proc. 94-45, 1994 2 C.B. 684, for the formation of liquidating trusts.  If the Liquidating Fund cannot be structured to comply with Rev. Proc. 94-45, then the Liquidating Fund will be structured as another entity or entities intended not to be subject to federal income tax, i.e. a "flow through" entity.

6.13.2    <u>Assets Treated as Owned by Creditors</u>.  All parties, including, without limitation, the Debtors, the Liquidating Agent, and the Holders of Allowed Claims and Interests in Classes PRI-6, PRII-7 and PRIII-6 shall, for all U.S. federal income tax purposes, treat the transfer of the Remaining Assets to the Liquidating Fund as (a) a transfer of the Remaining Assets directly to the Holders of Allowed Claims and Interests in Classes PRI-6, PRII-7 and PRIII-6  followed by (b) such Holders' transfer of the Remaining Assets to the Liquidating Fund, in exchange for Trust Interests.  The Holders of Allowed Claims and Interests in Classes PRI-6, PRII-7 and PRIII-6 shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Liquidating Fund's assets.

6.13.3    <u>Tax Reporting</u>.  The Liquidating Agent shall file tax returns for the Liquidating Fund that are legally required to be filed.  The Liquidating Agent shall also send annually to each Holder of a Trust Interest a separate statement setting forth the Holder's share income, gain, loss, deduction, or credit related thereto and will instruct all such Holders to report such items on their federal income tax returns.  The Liquidating Fund's taxable income, gain, loss, deduction, or credit will be allocated to the Holders of Trust Interests in accordance with their relative interests in the Liquidating Fund.

As soon as possible after the Effective Date, the Liquidating Agent shall make a good faith valuation of the Remaining Assets, and such valuation shall be used consistently by all parties (including, without limitation, the Post-Confirmation Debtors, the Liquidating Agent and the Holders of Trust Interests) for all federal income tax purposes.  The Liquidating Agent also shall file or cause to be filed, any other statements, returns, or disclosures relating to the Liquidating Fund that are required by any governmental unit.

Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including receipt by the Liquidating Agent of a private letter ruling if requested, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested), the Liquidating Agent shall (i) treat any assets allocable to, or retained on account of, Disputed Claims as held by the Disputed Claims Reserve, which shall be composed of one or more discrete trusts for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Disputed Claim in accordance with the trust provisions of the Tax Code (sections 641 et seq.), (ii) treat as taxable income or loss of the

Disputed Claims Reserve, with respect to any given taxable year, the portion of the taxable income or loss of the Liquidating Fund that would have been allocated to Holders of Disputed Claims had such claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such claims are unresolved), (iii) treat as a Distribution from the Liquidating Fund for Disputed Claims resolved earlier in the taxable year, to the extent that such Distributions related to taxable income or loss of the Liquidating Fund for Disputed Claims determined in accordance with the provisions hereof, and (iv) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes. All Holders of Trust Interests shall report, for United States tax purposes, consistent with the foregoing.

The Liquidating Agent shall be responsible for payments, out of the Remaining Assets, of any taxes imposed on the Liquidating Fund or its assets, including the Disputed Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claims Reserve is insufficient to pay any portion of such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims subsequently have been resolved, deducted from any amounts distributable by the Liquidating Agent as a result of the resolutions of such Disputed Claims.

The Liquidating Agent may request an expedited determination of the taxes of the Liquidating Fund, including the Disputed Claims Reserve, under Bankruptcy Code section 505(b) for all returns for, or on behalf of the Liquidating Fund, for all taxable periods through the dissolution of the Liquidating Fund.

6.14    *Cancellation of Existing Securities and Agreements*.

Except as otherwise set forth in this Plan, on the Effective Date with respect to each Debtor, (i) any Certificates evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors shall be deemed to be fully and finally cancelled and (ii) the obligations of and Claims against the Debtors under, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents evidencing or creating any indebtedness or obligation of the Debtors, will be released and satisfied; provided, however, that subject to section 6.6 of the Plan, the Interests in the Debtors shall not be affected, released or amended by the Plan.

Notwithstanding anything else herein, the 9.75% Bonds and the FRN Bonds shall only be cancelled as described in section 6.15 of the Plan.

6.15    *Cancellation of Bonds and Termination of Loan Agreements*.

Other than any amounts distributed under the Plan on account of Classes PRI-3, PRII-3 and PRIII-3 to the 9.75% Trustee or the FRN Trustee, as applicable, the 9.75% Trustee and the FRN Trustee will receive no further monies from the Debtors on account of the Allowed 9.75% Bond Claims and the Allowed FRN Bond Claims. Upon the 9.75% Trustee's and the FRN Trustee's respective disbursements of all amounts received under the Plan and/or held pursuant

to the 9.75% Loan Agreement or the FRN Loan Agreement, as applicable, such disbursements being pursuant to the 9.75% Loan Agreement and the FRN Loan Agreement, respectively, the 9.75% Bonds and the FRN Bonds will be cancelled as obligations of the Debtors and the 9.75% Bonds and the FRN Bonds will be of no further force or effect as obligations of the Debtors.

Notwithstanding any other term or provision of the Plan, however, the 9.75% Loan Agreement and the FRN Loan Agreement shall remain in full force and effect as obligations of the Debtors until the 9.75% Trustee or the FRN Trustee, as applicable, have performed the functions necessary or appropriate under the Plan and applicable Loan Agreement, including (i) making disbursements to the Bondholders pursuant to the applicable Loan Agreement, (ii) maintaining and asserting any rights or liens on account of the 9.75% Bonds or the FRN Bonds, including for the payment to the 9.75% Trustee or the FRN Trustee of all amounts due to them for their fees and expenses, and, ultimately, (iii) cancelling the 9.75% Bonds or the FRN Bonds, as applicable, as obligations of the Debtors. When the final disbursements under the Plan have been made to the 9.75% Trustee or the FRN Trustee, as applicable, such that no further recovery to Classes PRI-3, PRII-3 and PRIII-3 under the Plan shall be realized, the 9.75% Trustee and the FRN Trustee, respectively, shall make the final disbursements of amounts held under the applicable Loan Agreement and the 9.75% Bonds and the FRN Bonds, respectively, shall be cancelled as obligations of the Debtors, all pursuant to the terms of the applicable Loan Agreement.

Nothing in the Plan or the Confirmation Order shall be deemed to impair, waive or discharge any of the 9.75% Trustee's or the FRN Trustee's rights, remedies, liens or priorities or any other rights of the 9.75% Trustee or the FRN Trustee against any and all amounts held under the applicable Loan Agreement, or received pursuant to the Plan.

6.16    *Release of Liens.*

Except as otherwise provided in the Plan and subject to the provisions of section 6.16 hereof, upon the occurrence of the Initial Distribution Date, any Lien over assets or property of the Debtors securing any Other Secured Claim, any 9.75% Bond Claim or any FRN Bond Claim shall be deemed released against the Debtors, and the Holder of such Claim shall be authorized and directed to release any collateral or other property of any Debtor (including any Cash) held by such Holder and to take such actions as may be requested by the Liquidating Agent to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases.

6.17    *Corporate Action.*

Each of the matters provided for under the Plan involving the corporate structure of the Debtors or the Post-Confirmation Debtors or any corporate action to be taken by or required of the Debtors or the Post-Confirmation Debtors, as applicable, including (i) adoption or assumption, as applicable, of the agreements relating to the Liquidating Fund, including the Liquidating Trust Agreement and (ii) all other actions contemplated by the Plan (whether to occur, before, on or after the Effective Date), shall be deemed to have occurred and be effective as provided herein, subject to the requirements of applicable law, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any

requirement of further action by stockholders, creditors or directors of the Debtors, the Post-Confirmation Debtors or the Liquidating Agent, as applicable.

6.18    *Effectuating Documents; Further Transactions.*

The Debtors, their respective officers and designees, the Post-Confirmation Debtors, and the Liquidating Agent, are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and to take such actions as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of the Plan or to otherwise comply with applicable law.

6.19    *Exemption From Certain Transfer Taxes and Recording Fees.*

Pursuant to Bankruptcy Code section 1146, any transfers from the Debtors, the Post-Confirmation Debtors or the Liquidating Agent to any other Person or Entity pursuant to the Plan, or any agreement regarding the transfer of title to or ownership of any of the Remaining Assets will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.20    *Further Authorization.*

Each of the Debtors, the Post-Confirmation Debtors, and the Liquidating Agent shall be entitled to seek such orders, judgments, injunctions and rulings as they deem necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan.

**ARTICLE VII**
**DISTRIBUTIONS**

7.1    *Disbursement.*

Unless otherwise provided for herein, all Distributions under the Plan shall be made by the Debtors or the Liquidating Agent, as applicable.  On the Initial Distribution Date, the Debtors or the Liquidating Agent, as applicable, will pay all Unclassified Claims and all Claims Allowed as of the Effective Date.  Any subsequent Distributions on account of subsequently Allowed Claims and Trust Interests shall be made by the Liquidating Agent.

7.2    *Timing and Calculation of Amounts to be Distributed.*

Unless otherwise provided in the Plan, on the later of (i) the Initial Distribution Date, (ii) the date on which such Claim becomes an Allowed Claim, or as soon as practicable thereafter, or (iii) such other date as may be ordered by the Bankruptcy Court, each Holder of an Allowed Claim or a Trust Interest shall receive the Distribution to which the Holders of Allowed Claims

or Trust Interests in the applicable Class are entitled. In the event that any payment or act under the Plan or the Liquidating Trust Agreement is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, Distributions on account of such Disputed Claims shall be made pursuant to the provisions of ARTICLE VIII hereof.

7.3 *Distributions of Cash*.

Any Distribution of Cash made by the Liquidating Agent pursuant to the Plan and the Liquidating Trust Agreement shall, at the Liquidating Agent's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

7.4 *No Interest on Claims or Interests*.

Unless otherwise ordered by the Bankruptcy Court or included as part of an Allowed Claim or Interest, post-petition interest shall not accrue or be paid on Claims or Interests, and no Holder shall be entitled to interest accruing on or after the Petition Date on any Claim or Interest. Additionally, interest shall not accrue or be paid on any Disputed Claim or Interest in respect of the period from the Effective Date to the date a Distribution is made, when and if such Disputed Claim or Interest becomes an Allowed Claim or Interest, unless such interest is included as part of the Allowed Claim or Interest.

7.5 *Delivery of Distributions*.

Except as otherwise set forth in the Plan, the Distribution to a Holder of an Allowed Claim or Trust Interest shall be made by the Debtors or the Liquidating Agent, as applicable (i) at the address set forth on the proof of Claim Filed by such Holder, (ii) at the address set forth in any written notices of address change delivered to the Debtors or Liquidating Agent after the date of any related proof of Claim, (iii) at the addresses reflected in the Schedules if no proof of Claim has been Filed and if neither the Debtors nor the Liquidating Agent has received a written notice of a change of address, or (iv) if the Holder's address is not listed in the Schedules, at the last known address of such Holder available to the Debtors. Any Distribution with regard to Classes PRI-3, PRII-3, PRIII-3, PRIII-6 or PRII-7 shall be made by the Liquidating Agent or the Debtors by wire transfer to each of the 9.75% Trustee, the FRN Trustee or the 10.85% Trustee, as applicable, pursuant to the Loan Agreements and related documents. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Liquidating Agent is notified of such Holder's then-current address, at which time all previously returned Distributions shall be made to such Holder without interest. Amounts in respect of undeliverable Distributions made in Cash shall be retained by the Liquidating Agent until such Distributions are claimed. All Cash Distributions returned to the Liquidating Agent and not claimed within six months of return shall be irrevocably retained by the Liquidating Agent and the Claim of any Holder to such property or interest in property shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary. The funds so held shall become Liquidation Proceeds available for Distribution to the remaining Holders of Allowed Claims or Trusts Interests at the end of such six-month period.

7.6     *Distributions to Holders as of the Distribution Record Date.*

All Distributions on account of Allowed Claims or Interests shall be made to the Record Holders of such Claims or Interests. As of the close of business on the Distribution Record Date, the Claims and Interests register maintained by the Debtors shall be closed, and there shall be no further changes to the Record Holder of any Claim or Interest. The Distribution Record Date shall be established by the Confirmation Order, or, if the Confirmation Order does not explicitly establish a Distribution Record Date, the Distribution Record Date shall be the date of the Confirmation Order. The Debtors or the Liquidating Agent, as applicable, shall have no obligation to recognize any transfer of any Claim or Interest occurring after the Distribution Record Date. The Debtors and the Liquidating Agent shall instead be entitled to recognize and deal for all purposes under the Plan with the Record Holders as of the Distribution Record Date.

7.7     *Disputed Claims Reserve.*

On the Effective Date, or as soon thereafter as is practicable, the Debtors or the Liquidating Agent, as applicable, shall establish the Disputed Claims Reserve, which may be established through one or more accounts, and shall reserve in respect of each Disputed Claim, Cash that would have been distributed to the Holder of such Disputed Claim if such Disputed Claim had been an Allowed Claim on the Effective Date in an amount equal to the least of (i) the amount of the Claim filed with the Bankruptcy Court, and in accordance with the priority asserted in any such Claim, or, if no amount was specified, an amount and priority determined by the Debtors or the Liquidating Agent, (ii) if no Claim was filed, the amount listed by the Debtors in the Schedules as not disputed, contingent or unliquidated, or (iii) the amount, if any, estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code. Any Cash reserved by the Debtors or the Liquidating Agent on account of Disputed Claims shall be set aside, segregated and held in interest-bearing accounts or certificates of deposit pending a final determination regarding the allowance of any Disputed Claim. Notwithstanding anything to the contrary contained herein, the amount of Cash (including interest actually earned thereon) reserved in respect of any Disputed Claim shall constitute the maximum amount of Cash that could be distributed to the Holder of such Disputed Claim. Subject to the provisions of section 6.13.3 hereof, the Liquidating Agent shall be responsible for payments out of the Liquidating Fund of any taxes imposed on the Liquidating Fund or its assets, including the Disputed Claims Reserve.

7.8     *De Minimis Distributions.*

Prior to the Final Distribution Date, the Liquidating Agent shall have no obligation to make, but in its sole and absolute discretion may elect to make, a Distribution to a specific Holder of a Trust Interest if the amount to be distributed to such Holder in respect of such Trust Interest on any particular Distribution Date is less than five hundred dollars. If the Liquidating Agent elects not to make Distributions of less than five hundred dollars, then all such Distributions shall remain in the Liquidating Fund earmarked for ultimate Distribution to such Holders on the Final Distribution Date or on such earlier Distribution Date, if any, on which the aggregate accumulated Distribution to any such Holder is five hundred dollars or more. The Liquidating Agent shall have no obligation to make, but in its sole and absolute discretion may elect to make, a Distribution to a specific Holder of a Trust Interest if the amount to be

distributed to such Holder in respect of such Trust Interest on the Final Distribution Date is less than twenty five dollars.

7.9     *Withholding Taxes*.

The Liquidating Agent shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under the Plan shall be subject to any such withholding and reporting requirements.

7.10    *Disbursements to Bondholders*.

7.10.1    As set forth in section 7.5 hereof, any amounts distributed with regard to Classes PRI-3, PRII-3, PRIII-3, PRIII-6 or PRII-7 shall be delivered to the 9.75% Trustee, the FRN Trustee or the 10.85% Trustee, as applicable.  The Trustees shall make disbursements in accordance with the applicable Loan Agreement and related documents.

7.10.2    Fifty percent of the Distributions on account of Class PRI-3 9.75% Bond Claims and Class PRII-3 9.75% Bond Claims shall be drawn from available Rig I Proceeds and the remaining 50% shall be drawn from available Construction Contract II Proceeds; provided, however, that notwithstanding the foregoing, PetroRig I and PetroRig II shall remain jointly and severally obligated to pay Holders of 9.75% Bond Claims until the 9.75% Bond Claims are paid in full.

7.11    *Disbursements to the LOG Group*

In full and final satisfaction of the Allowed PRI-5 LOG Group Claim, Allowed PRII-5 LOG Group Claim and Allowed PRIII-5 LOG Group Claim, on the Initial Distribution Date, the LOG Group shall receive Distributions (through the Liquidating Agent) equal, in the aggregate, to the LOG Distribution.  The LOG Distribution shall be comprised of (i) the General Unsecured Claim Holder Contribution and (ii) an aggregate of $4,500,000 to be funded by the Debtors, based on an allocation of funding amongst the separate Debtor Estates to be determined by the Debtors prior to the Confirmation Date and set forth in the Plan Supplement.  LOG UK shall be designated by the LOG Group to vote each of the LOG Group Claims in respect of the Plan and to receive on behalf of the Holders of Allowed PRI-5, PRII-5 and PRIII-5 LOG Group Claims the LOG Distribution and hold the LOG Distribution in trust for the benefit of each member of the LOG Group ratably in proportion to each of their respective Claims against each the Debtors. For the avoidance of doubt, and notwithstanding anything herein or in the Plan Supplement to the contrary, Holders of Allowed LOG Group Claims shall not be entitled to receive Distributions totaling in excess of $5,000,000.

7.12    *Disbursements to General Unsecured Claim Holders*

An amount sufficient to fund the General Unsecured Claim Holder Contribution shall be deducted from the Distributions to be made to Holders of General Unsecured Claims that are Allowed as of the Effective Date.  To the extent that additional General Unsecured Claims are Allowed after the Effective Date, the *pro rata* contribution to be made on account of each General Unsecured Claim shall be recalculated based upon the aggregate dollar amount of all Allowed General Unsecured Claims, and, subject to section 7.8 hereof, any excess deductions

from the Distributions of General Unsecured Creditors Allowed as of the Effective Date shall be refunded through an additional Distribution to Holders of such Claims.  General Unsecured Creditors asserting a single Claim against multiple, jointly and severally liable Debtors shall not be entitled any greater Distributions than the Distribution to which they would had been entitled had they asserted such Claim against only one Debtor.

7.13    *Annual Distributions*.

Notwithstanding the foregoing provisions of Article VII, other than section 7.8 of the Plan, the Liquidating Agent shall distribute at least annually to the Holders of Trust Interests the Liquidating Fund's net income and all net proceeds from the sale of its assets, except the Retained Proceeds.

## ARTICLE VIII
## PROCEDURES FOR TREATING AND RESOLVING DISPUTED CLAIMS

8.1    *Objections to Claims*.

The Debtors and the Liquidating Agent shall be entitled to object to Claims; provided, however, that the Debtors and the Liquidating Agent shall not be entitled to object to Claims (i) that have been Allowed by a Final Order or (ii) that are Allowed by the express terms of the Plan.  Any objections to Claims must be Filed by the Claims Objection Deadline, as may be extended by the Bankruptcy Court.

8.2    *No Distributions Pending Allowance*.

Except as otherwise provided herein, no Distributions shall be made with respect to any portion of a Claim unless and until (i) the Debtors determine that such Claim is not objectionable in part or in whole, following a notice of Claim allowance to be filed with the Bankruptcy Court, and served on the Committee (if the Committee remains extant) and the Trustees, (ii) the Claims Objection Deadline has passed and no objection to such Claim has been Filed, (iii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court, and such Claim becomes an Allowed Claim or (iv) otherwise Allowed by the Bankruptcy Court.

8.3    *Estimation of Claims*.

The Debtors or the Liquidating Agent, as applicable, may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Bankruptcy Code section 502 regardless of whether the Debtors or the Liquidating Agent, as applicable, has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors (and after the Effective Date, the Liquidating Agent) may elect to pursue any supplemental

proceedings to object to the allowance of any ultimate payment on such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

8.4 *Resolution of Claims Objections*.

On and after the Effective Date, and subject to the provisions of the Liquidating Trust Agreement, the Liquidating Agent shall have the sole authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without further notice or approval of the Bankruptcy Court.

8.5 *Distributions after Allowance*.

After (i) the occurrence of the applicable Claims Objection Deadline, if no objection to a Claim has been timely Filed, (ii) the affirmative allowance of a Claim by notice filed in accordance with section 8.2 hereof or (iii) a Disputed Claim becomes an Allowed Claim, the Liquidating Agent shall, in accordance with Article VII hereof, distribute to the Holder thereof, all Distributions to which such Holder is then entitled under the Plan, except as otherwise set forth herein.

8.6 *Fractional Trust Interests*.

No fractional Trust Interests shall be distributed and no Cash shall be distributed in lieu of such fractional Trust Interests. When any distribution pursuant to the Plan on account of a Trust Interest would otherwise result in the issuance of a number of Trust Interests that is not a whole number, the actual distribution of Trust Interests shall be rounded as follows: (a) fractions of one-half or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half shall be rounded to the next lower whole number with no further payment therefore. The total number of authorized Trust Interests to be distributed to the Holders of Allowed Claims and Interests in Classes PRI-6, PRII-7 and PRIII-6 shall be adjusted as necessary to account for the foregoing rounding.

8.7 *Setoff and Recoupment*.

The Debtors or the Liquidating Agent, as applicable, may, but shall not be required to, setoff against or recoup from any Claim, any claims of any nature whatsoever that the Debtors may have against any claimant, whether pursuant to section 553 of the Bankruptcy Code, applicable state or federal law or otherwise, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Post-Confirmation Debtors or the Liquidating Agent, as applicable, of any such claim they may have against such claimant.

## ARTICLE IX
## EFFECT OF PLAN CONFIRMATION

9.1 *Satisfaction of Claims.*

Except to the extent otherwise provided in the Plan, the treatment of all Claims against or Interests in the Debtors under the Plan shall be in exchange for and in complete satisfaction and release of, all Claims against or Interests in the Debtors of any nature whatsoever, known or unknown, including any interest accrued or expenses incurred thereon from and after the Petition Date, or against their Estates or properties or interests in property. Except as otherwise provided in the Plan, upon the Effective Date, all Claims against and Interests in the Debtors shall be satisfied and released in full in exchange for the consideration provided under the Plan. Except as otherwise provided in the Plan, all Persons and Entities shall be precluded from asserting against the Debtors, the Post-Confirmation Debtors and their respective Estates, the Liquidating Agent or the Liquidating Fund, any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

9.2 *Releases Pursuant to the Plan.*

9.2.1 <u>Releases by the Debtors of Certain Parties</u>. To the extent permitted by applicable law, except for the right to enforce the Plan, the Post-Confirmation Debtors, and the Estates shall, effective upon the occurrence of the Effective Date, be deemed to forever release the Released Parties from any and all Claims, Interests, obligations, rights, suits, demands, damages, causes of action, remedies and liabilities whatsoever related to the Debtors, the Post-Confirmation Debtors, the Estates, the Liquidating Agent and the Liquidating Fund, existing as of the Effective Date or thereafter arising from any act, omission, event or other occurrence that occurred on or prior to the Effective Date, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, in law, equity or otherwise, other than for such Released Parties' willful misconduct, criminal misconduct, misuse of confidential information that causes damages or for personal gain, fraud or *ultra vires* acts of gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of the claims released by the Debtor Release; (ii) in the best interests of the Debtors and all Holders of Claims; (iii) fair, equitable and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to the Debtors, the Post-Confirmation Debtors, or the Liquidating Agent asserting any Claim released by the Debtor Release against any of the Released Parties.

9.2.2 <u>Release by Holders of Claims and Interests</u>. To the extent permitted by applicable law, except for the right to enforce the Plan, each of the Released Parties shall, effective upon the occurrence of the Effective Date, be deemed to forever release the Releasing Parties, the Post-Confirmation Debtors, and each other Released Party and their respective property from any and all Claims, Interests, obligations, rights, suits, demands, damages, causes

of action, remedies and liabilities whatsoever related to the Debtors, the Post-Confirmation Debtors, the Estates, the Liquidating Agent and the Liquidating Fund, existing as of the Effective Date or thereafter arising from any act, omission, event or other occurrence that occurred on or prior to the Effective Date, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, in law, equity or otherwise, other than for their willful misconduct, criminal misconduct, misuse of confidential information that causes damages or for personal gain fraud or *ultra vires* acts of gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release granted pursuant to this section 9.2.2, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the release is: (i) in exchange for the good and valuable consideration provided by the Debtors, the Post-Confirmation Debtors, and the Released Parties, a good faith settlement and compromise of the Claims released by the release granted pursuant to this section 9.2.2; (ii) in the best interests of the Debtors and all Holders of Claims; (iii) fair, equitable and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to the Releasing Parties from asserting any Claim released pursuant to this section 9.2.2 against any of the Debtors, the Post-Confirmation Debtors, the Liquidating Agent or the Released Parties, as applicable.

9.3     *Releases Pursuant to LOG Claims Stipulation*

9.3.1     <u>Debtor's Release of the LOG Group</u>.  Pursuant to the terms of the LOG Claims Stipulation, with respect to each member of the LOG Group, each of the Estate Parties irrevocably, unconditionally and without reservation of any kind, generally releases and forever discharges the LOG Released Parties from and against any and all causes of action, claims, interests, liabilities, obligations, rights, demands, remedies, suits, debts, judgments and damages, of any kind whatsoever, whether direct or derivative, matured or unmatured, disputed or undisputed, known or unknown, liquidated or unliquidated, foreseen or unforeseen, discoverable or undiscoverable, fixed or contingent, in law, equity or otherwise, which any such Estate Party has, had or may have in the future against any of the LOG Released Parties relating to the Debtors and their Estates, excluding, however, the Estate Parties' right in relation to the LOG Distribution under the terms of the Plan and the LOG Claims Stipulation.

9.3.2     <u>LOG Group's Release of the Debtors</u>.  Pursuant to the terms of the LOG Claims Stipulation, each member of the LOG Group irrevocably, unconditionally and without reservation of any kind waives, generally releases and forever discharges the Estate Parties from and against any and all causes of action, claims, interests, liabilities, obligations, rights, demands, remedies, suits, debts, judgments, and damages, of any kind whatsoever, whether direct or derivative, matured or unmatured, disputed or undisputed, known or unknown, liquidated or unliquidated, foreseen or unforeseen, discoverable or undiscoverable, fixed or contingent, in law, equity or otherwise, which any member of the LOG Group has, had, or may have in the future against any of the Estate Parties relating to the LOG Claims or the Debtors, excluding, however, the LOG Group's rights in relation to the LOG Distribution under the terms of the Plan and the LOG Claims Stipulation.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases granted pursuant to the LOG Claims Stipulation, and further, shall constitute the Bankruptcy Court's finding that such releases: (i) are in exchange for good and valuable consideration provided by the Debtors and the LOG Group; (ii) are in the best interests of the Debtors and all Holders of Claims; (iii) constitute a good faith settlement and compromise of the Claims released by the LOG Claims Stipulation and are fair, equitable and reasonable; (iv) are given and made after due notice and opportunity for hearing; and (v) are a bar to Debtors, Post-Confirmation Debtors, the Liquidating Agent and any member of the LOG Group from asserting any Claim released pursuant to the LOG Claims Stipulation against any of the Debtors, the Post-Confirmation Debtors, the Liquidating Agent or the LOG Group, as applicable.

9.4     *Preservation of Causes of Action.*

In accordance with Bankruptcy Code section 1123(b)(3), the Liquidating Agent shall retain and may pursue all Causes of Action. After the Effective Date, the Liquidating Agent, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Causes of Action (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. The Liquidating Agent, in its sole discretion, may pursue such Causes of Action so long as it is consistent with its fiduciary duties and the fiduciary duties of the Liquidating Fund. The failure of the Debtors to specifically list any claim, right of action, suit, proceeding or other Cause of Action in the Plan does not, and will not be deemed to, constitute a waiver or release by the Estates, the Liquidating Agent, the Post-Confirmation Debtors, or the Debtors of such claim, right of action, suit, proceeding or other Cause of Action, and the Liquidating Agent shall retain the right to pursue such claims, rights of action, suits, proceedings and other Causes of Action in its sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Cause of Action upon or after the confirmation or consummation of the Plan.

9.5     *Exculpation and Limitation of Liability.*

To the extent permitted by applicable law, the Debtors, the Post-Confirmation Debtors, the Estates, the Liquidating Agent, the Liquidating Fund, the Committee and each member of the Committee (solely in each member's capacity as a member of the Committee, and not in its individual capacity as a creditor of the Debtors, and except to the extent that any member of the Committee misuses or discloses any confidential or privileged information of the Debtors in violation of applicable confidentiality agreements), Norsk Tillitsmann, ASA, in its capacities as Trustees, the Bondholders and any of such parties' respective current and post-Petition Date and pre-Effective Date members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and as of the Effective Date are released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases, the negotiation and filing of the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation of the Plan, the

consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct, criminal misconduct, misuse of confidential information that causes damages or for personal gain, fraud or *ultra vires* acts of gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided, however, that the exculpation and limitation of liability provided herein shall not be applicable to the members of the LOG Group, whose rights and remedies are governed by the LOG Claim Stipulation.

9.6    *Injunction*.

To the extent permitted by applicable law, except as otherwise provided herein, all Persons or entities, including each of the members of the LOG Group, who have held, hold, or may hold Claims against or Interests in any Debtor are permanently enjoined from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind of any such Claim or Interest against any Post-Confirmation Debtor, the Liquidating Agent or the Liquidating Fund, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any Post-Confirmation Debtor, the Liquidating Agent or the Liquidating Fund with respect to any such Claim or Interest, (iii) creating, perfecting or enforcing any encumbrance of any kind against any Post-Confirmation Debtor, the Liquidating Agent or the Liquidating Fund with respect to any such Claim or Interest, (iv) asserting any right or setoff, subrogation, or recoupment of any kind against any obligation due from any Post-Confirmation Debtor, the Liquidating Agent or the Liquidating Fund or against the property or interests in property of any Post-Confirmation Debtor, the Liquidating Agent or the Liquidating Fund with respect to any such Claim or Interest, and (v) pursuing any claim released pursuant to section 9.2 of the Plan or the LOG Claims Stipulation; provided, however, that nothing herein shall limit the enforcement of the LOG Claims Stipulation.

Unless otherwise provided, all injunctions or stays arising under or entered during the Debtors' Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date.

9.7    *Insurance*.

On or prior to the Effective Date, and as a condition to the Effective Date, the Debtors shall have arranged and paid for extended existing insurance coverage or purchased new insurance coverage covering the Liquidating Agent and the Debtors' post-Petition Date officers and directors from claims and causes of action of any third party (including without limitation any Holder of a Claim) that remain extant and unreleased under this ARTICLE IX on the Effective Date. Such extended or newly purchased insurance shall be in such amounts, for such terms or periods of time, and placed with such insurers as are determined by the Debtors to be reasonable under the circumstances or as specified and ordered by the Bankruptcy Court in the Confirmation Order.

9.8     *Effect of Confirmation*.

9.8.1    <u>Binding Effect</u>.  On the Confirmation Date, the provisions of the Plan shall be binding on the Debtors, the Post-Confirmation Debtors, the Estates, the Liquidating Agent, all Holders of Claims against or Interests in the Debtors, and all other parties in interest whether or not such Holders are Impaired and whether or not such Holders have accepted the Plan.

9.8.2    <u>Filing of Reports</u>.  Subsequent to the Effective Date, the Liquidating Agent shall file all reports and pay all fees required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee's Guidelines for compensation and reimbursement of expenses, and the rules and orders of the Bankruptcy Court.  Periodically thereafter as material events arise but no less frequently than every four months, the Liquidating Agent shall file a report with the Bankruptcy Court reflecting the status of the Liquidating Fund and the Disputed Claims Reserve, including, without limitation, a summary of amounts received and collected by the Liquidating Agent, distributions made by the Liquidating Agent pursuant to the Plan, fees and expenses paid or incurred by the Liquidating Agent, current balance of all accounts and reserves established by the Liquidating Agent, and such other information as directed by the Bankruptcy Court.

## ARTICLE X
## CONDITIONS PRECEDENT

10.1    *Conditions to the Effective Date.*

The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with section 10.2 of the Plan:

10.1.1    The clerk of the Bankruptcy Court shall have entered the Confirmation Order in the Debtors' Chapter 11 Cases in form and substance acceptable to the Debtors, and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto;

10.1.2    All other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan shall have been effected, including the documents comprising the Plan Supplement and, in each case, shall have been duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness shall have been satisfied or waived in accordance therewith;

10.1.3    The Debtors shall have arranged and paid for extended existing insurance coverage or purchased new insurance coverage in accordance with section 9.7 of the Plan; and

10.1.4    The Debtors shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement the Plan and that is required by law, regulation or order.

10.2 *Waiver of Conditions to Consummation*.

The conditions set forth in section 10.1 of the Plan may be waived, in whole or in part, by the Debtors without any notice to any other parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors in their sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors). The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

**ARTICLE XI**
**RETENTION AND SCOPE OF JURISDICTION OF THE BANKRUPTCY COURT**

11.1 *Retention of Jurisdiction*.

Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

11.1.1 To adjudicate objections concerning the allowance, priority or classification of Claims and Interests and any subordination thereof, and to establish a date or dates by which objections to Claims must be Filed to the extent not established herein;

11.1.2 To liquidate the amount of any Disputed, contingent or unliquidated Claim, to estimate the amount of any Disputed, contingent or unliquidated Claim, and to establish the amount of any reserve required to be withheld from any Distribution under the Plan and the Liquidating Trust Agreement on account of any Disputed, contingent or unliquidated Claim;

11.1.3 To resolve all matters related to the rejection, or assumption and/or assignment, of any Executory Contract or Unexpired Lease of the Debtors;

11.1.4 To hear and rule upon all Cause of Actions commenced and/or pursued by the Liquidating Agent;

11.1.5 To hear and rule upon all applications for Professional Compensation;

11.1.6 To remedy any defect or omission, or reconcile any inconsistency in the Plan, as may be necessary to carry out the intent and purpose of the Plan;

11.1.7 To construe or interpret any provisions in the Plan and to issue such orders as may be necessary for the implementation, execution and consummation of the Plan, to the extent authorized by the Bankruptcy Code;

11.1.8 To hear, rule upon and enter orders approving any sales of Remaining Assets after the Effective Date;

11.1.9    To adjudicate controversies arising out of the administration of the Estate or the implementation of the Plan, including as related to the interpretation, implementation and enforcement of the Liquidating Trust Agreement;

11.1.10    To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of the Plan, including the Distribution of funds from the Liquidating Fund and the payment of Allowed Claims and Trust Interests;

11.1.11    To determine any suit or proceeding brought by the Liquidating Agent to recover property under any provisions of the Bankruptcy Code;

11.1.12    To hear and determine any tax disputes concerning the Liquidating Fund and to determine and declare any tax effects under the Plan;

11.1.13    To determine such other matters as may be provided for in the Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

11.1.14    To determine any controversies, actions or disputes that may arise under the provisions of the Plan, or the rights, duties or obligations of any Person under the provisions of the Plan;

11.1.15    To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which the Debtors sold any of their assets during the Chapter 11 Cases; and

11.1.16    To enter a final decree.

11.2    *Final Decree*.

The Bankruptcy Court may, upon application of the Liquidating Agent after Designated Notice, at any time on or after one hundred twenty (120) days after the Initial Distribution Date, enter a final decree in the Chapter 11 Cases, notwithstanding the fact that additional funds may eventually be distributed to parties in interest.  In such event, the Bankruptcy Court may enter an Order closing this case pursuant to Bankruptcy Code section 350; provided, however, that: (i) the Post-Confirmation Debtors, the Liquidating Agent, and other parties in interest shall continue to have all rights, powers, and duties set forth in the Plan and the Liquidating Trust Agreement and (ii) the Bankruptcy Court may from time to time reopen the Chapter 11 Cases if appropriate for any of the following purposes, among others: (a) administering the Liquidating Fund; (b) entertaining any adversary proceedings, contested matters or applications the Liquidating Agent has brought or brings with regard to the liquidation of Remaining Assets and the prosecution of Causes of Action; (c) enforcing or interpreting the Plan or the Liquidating Trust Agreement or supervising its implementation; or (d) for other cause.

# ARTICLE XII
## MISCELLANEOUS PROVISIONS

### 12.1 *Modification of the Plan.*

The Debtors or the Liquidating Agent, as applicable, may modify the Plan, including the Plan Supplement, pursuant to Bankruptcy Code section 1127 and as herein provided, to the extent applicable law permits. The Debtors or the Liquidating Agent, as applicable, may modify the Plan in accordance with this paragraph, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto. In the event of any modification on or before confirmation, any votes to accept or reject the Plan shall be deemed to be votes to accept or reject the Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest that have cast said votes. Subject to the limitations herein, the Debtors reserve the right in accordance with Bankruptcy Code section 1127 to modify the Plan at any time before the Confirmation Date.

### 12.2 *Allocation of Plan Distributions Between Principal and Interest.*

To the extent that any Holder of an Allowed Claim entitled to a Distribution under the Plan, other than the Bondholders, Holds a Claim that is composed of principal indebtedness and accrued but unpaid interest thereon, such Distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest. Nothing in this section 12.2 shall govern the allocation of such principal and interest amounts as they relate to the Bondholders.

### 12.3 *Creditors' Committee.*

Effective as of the Effective Date if no appeal of the Confirmation Order is then pending, the Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any further duties, responsibilities and obligations relating to the Chapter 11 Cases and under the Bankruptcy Code; provided, however, that the Committee and its professionals shall continue to exist with respect to (i) any pending litigation or contested matter to which the Committee is a party and any appeals Filed regarding Confirmation; (ii) applications Filed pursuant to Bankruptcy Code sections 330 and 331 in accordance with section 2.3 of the Plan; and (iii) pending appeals.

### 12.4 *Governing Law.*

Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by the laws of the State of New York.

12.5    *Headings.*

The headings of the articles and the sections of the Plan have been used for convenience of reference only and shall not limit or otherwise affect the meaning thereof.

12.6    *Revocation of Plan.*

The Debtors reserve the right, unilaterally and unconditionally, to revoke and/or withdraw the Plan at any time prior to entry of the Confirmation Order.  If the Debtors revoke and/or withdraw the Plan, the Bankruptcy Court does not enter a Confirmation Order or the Effective Date does not occur, (i) the Plan shall be deemed null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests or Claims by any Debtor against any other Entity; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor or any other Entity.

12.7    *Severability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (iii) nonseverable and mutually dependent.

12.8    *No Admissions; Objection to Claims.*

Nothing in the Plan shall be deemed to constitute an admission that any Person, as being the Holder of a Claim, is the Holder of an Allowed Claim, except as expressly provided in the Plan.  The failure of the Debtor to object to or examine any Claim for purposes of voting shall not be deemed a waiver of the Debtor's or the Liquidating Agent's, as applicable, rights to object to or reexamine such Claim in whole or in part (including, without limitation, for purposes of Distribution).

12.9    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan is intended to or shall affect the Debtors', the Post-Confirmation Debtors', the Liquidating Agent's, the Liquidating

Fund's or the Estates' rights and defenses in respect of any Claim that is Unimpaired under the Plan, including, but not limited to, all rights in respect of legal and equitable defenses to or setoffs or recoupment against such Unimpaired Claims.

12.10  *Substantial Consummation*.

Substantial consummation of the Plan under section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Initial Distribution Date.

12.11  *No Bar to Suits*.

Except as otherwise provided in ARTICLE IX of the Plan, neither the Plan nor confirmation hereof shall operate to bar or estop the Liquidating Agent, from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any other Person, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in any disclosure statement Filed in connection with the Plan or whether or not any payment was made or is made on account of any such Claim.

12.12  *Exhibits/Schedules*.

All exhibits and schedules to the Plan, including the Plan Supplement, and all attachments thereto, are incorporated into and are a part of the Plan as if set forth in full herein.

12.13  *Inconsistency*.

In the event that provisions of the Disclosure Statement and provisions of the Plan conflict, the terms of the Plan shall govern and control.

12.14  *Notices*.

Any notice required or permitted to be provided to the Debtors or the Liquidating Agent, as applicable, under the Plan shall be in writing and served by overnight courier service, facsimile transmission or certified mail, return receipt requested, addressed as follows:

The Debtors:

PetroRig I Pte Ltd, et al.
c/o Pirinate Consulting, LLC
Attention:  Eugene I. Davis
5 Canoe Brook Drive
Livingston, NJ 07039

with a copy to:

Akin Gump Strauss Hauer & Feld LLP
Attention:  Ira S. Dizengoff, David H. Botter, Kenneth A. Davis
One Bryant Park

New York, NY  10036
Facsimile:  (212) 872-1002

<u>The Liquidating Agent</u>:

[  ]

12.15   *Designated Notice*.

Notwithstanding any other provision of the Plan, when notice and a hearing are required with regard to any action to be taken after the Confirmation Date by the Liquidating Agent, as applicable, Designated Notice shall be adequate.

Dated this 16th day of August 2011.

Respectfully submitted,

**PetroRig I Pte Ltd, PetroRig II Pte Ltd, PetroRig III Pte Ltd.**

By: */s/ Eugene I. Davis*
Name: Eugene I. Davis
Title: Director

## Exhibit A

## Schedule of Allowed General Unsecured Claims

PetroRig I - Allowed General Unsecured Claims

| Claim No. | Date | Creditor | Address / Telephone | Currency | Original Filed Amount (filed Currency Amount) | Original Filed Amount (USD Amount) | Current Claim Amount (USD Amount) (as of 2nd Omni) | Type | Disposition | Basis |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 6/10/2009 | Drew Marine, Div. of Ashland | Collection Department, P. O. Box 2219, Columbus, OH 43216, P: (614)790-6007 | USD | 28,694.38 | 28,694.38 | 28,694.38 | Unsecured | | Goods sold |
| 3 | 6/12/2009 | Oregon Prime Marketing (Int'l) Pte ltd | 10 UBI Crescent #02-94/95 UBI Techpark, Singapore 408564 | SGD | 4,614.60 | 3,135.16 | 3,135.16 | Unsecured | Recalculated | Goods sold |
| 4 | 6/15/2009 | Rotra Chemicals Pte Ltd | 23 Tuas Avenue 13, #01-05, Singapore 638990, P: 862-1288 | SGD | 8,100.00 | 5,503.14 | 5,503.14 | Unsecured | Recalculated | Goods sold |
| 5 | 6/15/2009 | Pacific Petroleum Pte Ltd | 10 Tanjong Penjuru, Singapore 609037, P: 65-2612531 | SGD | 5,701.50 | 3,873.60 | 3,873.60 | Unsecured | Recalculated | Goods sold |
| 6 | 6/15/2009 | Micro 2000 Technology Pte Ltd | 138 Joo Seng Road #04-03 Trivec House, Singapore 368361 | USD | 4,637.17 | 4,637.17 | 4,637.17 | Unsecured | Reclassified as unsecured | Computer Equipment and Repairs |
| 7 | 6/15/2009 | Eutex (Asia) Pte Ltd | 100-G Pasir Panjang Road, Singapore 118523 | SGD | 48,285.00 | 32,804.83 | 32,804.83 | Unsecured | Recalculated | Goods sold |
| 8 | 6/15/2009 | RMG Travel Ptd ltd | 178 Telok Ayer St., Singapore 068826, P: 65-62200112 | USD | 189,931.00 | 189,931.00 | 165,417.59 | Unsecured | Reduced | Air Tickets for PetroRig I crew |
| 9 | 6/15/2009 | Stress Engineering Services, Inc. | 13800 Westfair East Dr., Houston, TX 77041 | USD | 21,140.00 | 21,140.00 | 21,140.00 | Unsecured | | Goods/ Services (Engineering Services) |
| 10 | 6/15/2009 | Innocom Technologies Pte Ltd | 18 Kaki Bukit Road 3 #04-09/10, Entrepreneur Business Centre, Singapore 415978, P: 065-67495022 | SGD | 90,462.00 | 61,459.88 | 61,459.88 | Unsecured | Recalculated | Goods sold (Computer Equipment) |
| 11 | 6/12/2009 | Viking Airtech Pte Ltd | No. 12 Gul Street 3, Singapore 629267 P: 65-65770888 | SGD | 20,258.73 | 13,763.78 | 13,763.78 | Unsecured | Recalculated | Goods sold |
| 12 | 6/11/2009 | Marking Services Inc. (S) Pte Ltd | 196 Pandan Loop #07-15, Pantech Business Hub, Singapore 128334, P: 65 68721529 | SGD | 10,816.81 | 7,348.94 | 7,348.94 | Unsecured | Recalculated | Goods sold |
| 13 | 6/10/2009 | TorqLite, Inc. | 8 Dufresne Loop, Luling, LA 70070 | USD | 35,035.18 | 35,035.18 | 35,035.18 | Unsecured | | Goods Sold |

| Claim No. | Date | Creditor | Address / Telephone | Currency | Original Filed Amount (filed Currency Amount) | Original Filed Amount (USD Amount) | Current Claim Amount (USD Amount) (as of 2nd Omni) | Type | Disposition | Basis |
|---|---|---|---|---|---|---|---|---|---|---|
| 14 | 6/8/2009 | Scana Offshore Services Singapore Pte Ltd | 9 Jurong Town Hall Road, #02-22 iHub, Singapore 609431, P: 65-68994294; 8901 Jameel Road, Suite 110, Houston, TX 77040 | USD | 174,090.00 | 174,090.00 | 174,090.00 | Unsecured | | Goods sold |
| 15 | 6/19/2009 | Aqua-Terra Oilfield Equipment & Services Pte Ltd | 19 Jurong Port Road, Singapore, 619093, P: 65-63194666 | SGD | 38,640.00 | 26,252.02 | 26,252.02 | Unsecured | Recalculated | Goods Supplied to PetroRig I Pte Ltd |
| 16 | 6/19/2009; rec'd 2nd copy on 8/17/09 | Oceanic Offshore Engineering Pte Ltd | 15 Joo Yee Road, Singapore 619200, P: 65-67747780 | SGD | 16,816.00 | 11,424.79 | 11,424.79 | Unsecured, | Surviving, Recalculated; Reclassified as Unsecured | Goods sold |
| 18 | 6/22/2009 | Wholesome (S) Pte Ltd | 48 Toh Guan Road East, #08-139, Enterprise Hub, Singapore 608586, P: 65:67958319 | USD | 5,750.00 | 5,750.00 | 5,750.00 | Unsecured | | Goods sold |
| 18 (Rig II) | 7/20/2009 | Infrared Camera Inc. | Attn: Gary Strahan, 2105 Cardinal Drive, 2105 W. Cardinal Drive, Beaumont, TX 77705-6336 | USD | Reclassed from Rig II to Rig I | Reclassed from Rig II to Rig I | 3,350.00 | Unsecured | Reclassed from Rig II to Rig I; and reclassed from secured to unsecured | Goods Sold |

| Claim No. | Date | Creditor | Address / Telephone | Currency | Original Filed Amount (filed Currency Amount) | Original Filed Amount (USD Amount) | Current Claim Amount (USD Amount) (as of 2nd Omni) | Type | Disposition | Basis |
|---|---|---|---|---|---|---|---|---|---|---|
| 19 | 6/24/2009 | Crystal Offshore Pte. Ltd. | Pitchayan & Associates, P.C., 72030 Broadway, Jackson Heights, NY 11372 | USD | 617,672.54 | 617,672.54 | 249,107.55 | Unsecured | $366,505.21 reclassified to PII and reduced to $1,192.21; PI amount re-calculated to $249,107.55 (incorrect foreign exchange) | Goods & Services |
| 20 | 6/12/2009 | Progressive Systems & Engineering Pte Ltd | Blk 1008 Eunos Ave 7, #01-05, Singapore 409579, P: 65 67452619 | USD | 15,061.00 | 15,061.00 | 15,061.00 | Unsecured | Surviving | Goods Sold |
| 21 | 6/25/2009 | Lor Engineering Oilfield Services Pte Ltd | Blk 41 Simei Rise, #01-24 Singapore 528784, P: 65 65424578 | USD | 68,510.50 | 68,510.50 | 68,510.50 | Unsecured | | Services Work Performed |
| 22 | 6/17/2009 | Pemac Pte Ltd | No. 54 Loyang Way, Singapore 508747, P: 65425611 | SGD | 10,300.00 | 6,997.82 | 6,997.82 | Unsecured | Recalculated | Goods Sold |
| 25 | 6/12/2009 | D Squared Technology Pte Ltd | 51, Lorong 17 Geylang, Unit #03-02, Superior Industrial Building, Singapore 388671, P: 65 6743 1833 | SGD | 5,877.51 | 3,993.18 | 3,993.18 | Unsecured | Recalculated | Goods Sold |
| 26 | 6/15/2009 | Chee Fatt Co Pte Ltd | 54 Tanjong Penjuru, Singapore 609035, P: 65 62942066 | SGD | 88,913.94 | 60,408.13 | 60,408.13 | Unsecured | Recalculated | Goods Sold |
| 27 | 6/12/2009 | Anson Oilfield Equipment Private Ltd | No. 13 Kwong Min Road, Singapore 628717, P: 65 65133640 | USD | 76,988.00 | 76,988.00 | 76,988.00 | Unsecured | | Goods Sold |
| 28 | 6/25/2009 | Oncor Trading Inc. | 21366 Provincial Blvd., Katy, Texas 77450, P: 281579-1217 | USD | 2,151.70 | 2,151.70 | 2,151.70 | Unsecured | | Goods Sold |
| 29 | 6/23/2009 | Chuan Huat International Pte Ltd | No. 57 UBI Ave 1, #04-11, UBI Centre, Singapore 408936, P: 65 68440551 | SGD | 180,553.80 | 122,668.25 | 122,668.25 | Unsecured | Recalculated | Goods/Raw Materials |
| 30 | 6/15/2009 | Kongsberg Maritime AS | P.O. Box 483, N-3601, Kongsberg, Norway, P: 47-32286306 | USD | 197,332.00 | 197,332.00 | 191,230.02 | Unsecured | Recalculated | Goods sold |
| 31 | 6/15/2009 | Singapore Valve & Fitting Pte Ltd | 28 Mandai Estate, Singapore 729917, 65 63635220 | SGD | 667.50 | 453.50 | 453.50 | Unsecured | Recalculated | Goods sold |

Rig I

| Claim No. | Date | Creditor | Address / Telephone | Currency | Original Filed Amount (filed Currency Amount) | Original Filed Amount (USD Amount) | Current Claim Amount (USD Amount) (as of 2nd Omni) | Type | Disposition | Basis |
|---|---|---|---|---|---|---|---|---|---|---|
| 32 | 6/15/2009 | Connector Specialist Inc/CSI Inc | c/o Phillip K. Wallace PLC, 2027 Jefferson Street, Mandeville, Lousiana, 70448, P:985.624.2824 | USD | 329,187.90 | 329,187.90 | 256,637.88 | Unsecured | Reduced | Goods sold |
| 33 | 7/10/2009 | Mid-Continent Equipment Group Pte Ltd | Loyang Offshore Supply Base Box 5070, Loyang Crescent, Singapore 508988, P: 65.65059200 | USD | 7,305.00 | 7,305.00 | 7,305.00 | Unsecured | | Goods Sold |
| 34 | 7/8/2009 | Gaylin International Pte Ltd | No. 7 Gul Avenue, Jurong, Singapore 629651, P: 65.68613288 | SGD | 26,175.00 | 17,783.30 | 17,783.30 | Unsecured | Recalculated | Goods Sold |
| 35 | 7/8/2009 | Ce-Test & Measurement (S) Pte Ltd | Attn. Christine Tan, 10 Jalan Besar #B1-19 Sim Lim Tower, Singapore 208787, P: 65.62925161 | SGD | 5,015.00 | 3,407.19 | 3,407.19 | Unsecured | Recalculated | Goods sold |
| 37 | 6/26/2009 | ODL Inc. | 1311 Broadfield Blvd, Ste. 200, Houston, Texas 77084, P:281.647.8300 | USD | 47,431.50 | 47,431.50 | 47,431.50 | Unsecured | | Services Performed |
| 38 | 6/26/2009 | ModuSpec Engineering Asia Pacific Pte Ltd | Florence Sim, 1 Bukit Batok Street 22, GRP Industrial Building #05-02, Singapore 659592, P: 65.68729288 | USD | 5,972.69 | 5,972.69 | 5,972.69 | Unsecured | | Services Performed |
| 39 | 6/26/2009 | Draeger Safety Asia Pte Ltd | 67 Ayer Rajah Crescent #06-03, Singapore 139950, P: 65.68729288 | SGD | 16,573.87 | 11,260.29 | 11,260.29 | Unsecured | Recalculated | Goods Sold |
| 40 | 6/26/2009 | W.W. Grainger Inc. | 7300 N. Melvina Ave, M240, Niles, IL 60714-3998 | USD | 11,858.16 | 11,858.16 | 11,858.16 | Unsecured | | Goods sold |
| 41 | 6/26/2009 | Petracarbon Pte Ltd | Blk 1001 Redhill Industrial Estate, #04-01/06, Jalan Bukit Merah, Singapore 159455 | SGD | 9,000.00 | 6,114.60 | 6,114.60 | Unsecured | Recalculated | Goods sold |
| 42 | 6/29/2009 | San Seng National Plastic Pte Ltd | No. 17 Tuas South Street 5, Singapore 637646, P:65.62612830 | SGD | 7,058.00 | 4,795.21 | 4,795.21 | Unsecured | Recalculated | Good sold |
| 43 | 7/17/2009 | Marine Accomm Pte Ltd | 30-A Hillview Terrace, Singapore 669247, P: 65-67633833 | SGD | 20,380.00 | 13,846.17 | 13,846.17 | Unsecured | Recalculated | Goods sold |
| 44 | 7/2/2009 | MTQ Engineering Pld Ltd. | 182 Pandon Loop, Singapore 128373, P: 65.67777651 | SGD | 66,780.00 | 45,370.33 | 45,370.33 | Unsecured | Recalculated | Goods Sold/Services Performed |
| 47 | 7/2/2009 | Forum Oilfield Asia Pacific Pte Ltd | 26 Soon Lee Road, Singapore 628086, P: 65-64654850 | USD | 3,291.36 | 3,291.36 | 3,291.36 | Unsecured | | Goods sold |

| Claim No. | Date | Creditor | Address / Telephone | Currency | Original Filed Amount (filed Currency Amount) | Original Filed Amount (USD Amount) | Current Claim Amount (USD Amount) (as of 2nd Omni) | Type | Disposition | Basis |
|---|---|---|---|---|---|---|---|---|---|---|
| 48 | 7/2/2009 | Advokatfirmaet Steenstrup Stordrange DA | Postboks 1150 Sentrum, 5811 Bergen, Norway | USD | 21,870.00 | 21,870.00 | 21,870.00 | Unsecured | Surviving | Unspecified (Legal Services) |
| 49 | 7/15/2009 | Franklin Offshore International Pte Ltd | Attn: Lee Siew Choo, No. 11 Pandan Road, Singapore 609259, P: 65.62643451 | USD | 5,928.78 | 5,928.78 | 5,829.25 | Unsecured | Recalculated | Goods sold |
| 50 | 7/15/2009 | Energy Equipment Services Pte Ltd | Attn: Lee Siew Choo, No. 11 Pandan Road, Singapore 609259, P: 65.62643451 | USD | 71,258.97 | 71,258.97 | 71,234.43 | Unsecured | Recalculated | Goods sold |
| 51 | 7/20/2009 | Wilhelmsen Ship Service | c/o Kevin P. Walters, Chauffe McCall, L.L.P., 815 Walker Street, Suite 953, Houston, Texas 77022<br><br>185 Pandon Loop<br>Singapore 128376 | USD | 103,156.27 | 103,156.27 | 103,156.27 | Unsecured | Reclassed from secured to unsecured | Goods sold (Necessaries for Vessel) |
| 52 | 7/30/2009 | Radiant International Pte. Ltd. | 190 Middle Road, #19-05 Fortune Centre, Singapore 188979, P: 65.62543805 | USD | 1,976.55 | 1,976.55 | 1,947.16 | Unsecured | Recalculated | Goods sold |
| 54 | 7/28/2009 | Boon Lay Stationary Pte Ltd | No. 2 Tuas Avenue 1, Singapore 639487 | SGD | 1,995.80 | 1,355.95 | 1,355.95 | Unsecured | Recalculated | Goods Sold |
| 55 | 8/3/2009 | Uniweld Products (USA) Pte Ltd | 40, Mactaggart Road, Singapore 368085, P: 65.62928888 | USD | 27,829.17 | 27,829.17 | 27,226.28 | Unsecured | Recalculated | Goods Sold |
| 56 | 8/14/2009 | Hadco | Attn: Hugh Brashier, P.O. Box 81189, Lafayette, LA 70598, P:337.251.1126 | USD | 71,754.80 | 71,754.80 | 68,754.80 | Unsecured | Original unsecured portion of claim reduced and priority portion amt of $13,375 reclassified as unsecured | Services Performed |

Rig I

| Claim No. | Date | Creditor | Address / Telephone | Currency | Original Filed Amount (filed Currency Amount) | Original Filed Amount (USD Amount) | Current Claim Amount (USD Amount) (as of 2nd Omni) | Type | Disposition | Basis |
|---|---|---|---|---|---|---|---|---|---|---|
| 57 | 8/7/2009 | Jason Electronics (Pte) Ltd | Blk 194 Pandan Loop, #06-05, Pantech Business Hub, Singapore 128383 | USD | 6,552.45 | 6,552.45 | 6,365.98 | Unsecured | Surviving Recalculated | Goods sold |
| 58 | 8/14/2009 | Atech Marine & Offshore Pte Ltd | 10 Anson Road, #18,18, International Plaza, Singapore 079903, P: 65.98004706 | SGD | 53,700.00 | 36,483.78 | 36,483.78 | Unsecured | Recalculated | Goods sold |
| 63 | 8/19/2009 | Svitzer Ocean Towage BV | Attn: Hans van der Donck, Jupiterstraat 33, 2132 HF Hoofddorp, Netherlands c/o Winter Scott Solicitors, Attn: Kenneth Scott, Sophie Jane Hunt, St. Olave's House, Ironmonger Lane, London EC2V 8EY | USD | 3,306,500.00 | 3,306,500.00 | 1,100,000.00 | Unsecured | Surviving, ASSUMING $2.2m settlement divided bw I and II) | Obligations under towage agreement |
| 66 | 8/19/2009 | SDV Logistics (Singapore) Pte Ltd | DeOrchis & Partners, Attn: Olivier D. L. DuPont, 61 Broadway, Suite 1900, New York, New York 10006, P: 212.344.4700 | USD | 69,482.77 | 69,482.77 | 67,450.42 | Unsecured | Recalculated | Services Performed |
| 67 | 8/17/2009 | Engineering & Marine Services Pte Ltd | Attn: Ting Teck Jin, 10 Tuas Avenue 11, Singapore 639076, P: 65.6862.1062 | USD | 89,115.30 | 89,115.30 | 26,170.49 | Unsecured | Reduced | Services Performed |
| 68 | 8/17/2000 | BMT Fluid Mechanics Ltd | Attn: John Burke, 67 Stanton Avenue, Teddington TWII 0JY, United Kingdom, P: 44.20.8614.4434 | GBP | 6,600.00 | 10,010.88 | 10,010.88 | Unsecured | Surviving, Recalculated | Services Performed |
| 72 | 8/18/2009 | Echem Instruments Pte Ltd | Att: NG Lai Teck, 57 Ubi Ave 1 Unit 06-08, Ubi Centre, Singapore 408936 | USD | 2,730.00 | 2,730.00 | 2,201.26 | Unsecured | Reclassified as unsecured and $528.74 expunged | Goods Sold |
| 76 | 8/17/2009 | ABB AS | Attn: Hans Jorgen Brusevold, Process Autmation Division, P-Box 94 N1375 Billingstad, Norway, P: 0047.92.60.59.74 | USD | 13,766.40 | 13,766.40 | 13,303.85 | Unsecured | Recalculated | Goods and Services Sold |

Rig I

PetroRig I - Allowed General Unsecured Claims

| Claim No. | Date | Creditor | Address / Telephone | Currency | Original Filed Amount (filed Currency Amount) | Original Filed Amount (USD Amount) | Current Claim Amount (USD Amount) (as of 2nd Omni) | Type | Disposition | Basis |
|---|---|---|---|---|---|---|---|---|---|---|
| 83 | 8/19/2009 | Cameron | 4646 Sam Houston Parkway N. Houston, TX 77041 | USD | 4,417,811.36 | 4,417,811.36 | 4,417,811.36 | Unsecured | | Goods Sold |
| 84 | 8/19/2009 | PetroMENA ASA | c/o Joanne Romero, Lewis Brisbois Bisgard & Smith LLP, 199 Water Street, 25th Floor, New York, New York, 10038 | USD | 5,206,669.81 | 5,206,669.81 | 5,206,669.81 | Unsecured – Petromena | | Various |
| 98 | | Sanda Marketing | No. 2 Jurong East Street 21, #04-01B, IMM Building, Singapore, 609601, Attn: Chau Cheng Pou | USD | 7,000.41 | 7,000.41 | 6,921.05 | Unsecured | Recalculated | |
| 73 | 8/18/2009 | COR International Ltd. | c/o Michael Piana, COR Rentals USA Ltd, 2500 CityWest Blvd., Suite 300, Houston, TX 77042 | USD | 226,465.00 | 226,465.00 | 226,465.00 | Unsecured | | |

13,257,551.80

Rig I

PetroRig II - Allowed Claims PetroRig II - Allowed General Unsecured Claims

| Claim No. | Date | Creditor | Address / Telephone | Currency | Original Filed Amount (filed Currency Amount) | Original Filed Amount (USD Amount) | Current Claim Amount (USD Amount) (as of 2nd Omni) | Type | Disposition | Basis |
|---|---|---|---|---|---|---|---|---|---|---|
| 4 | 6/15/2009 | RMG Travel Pte ltd | 178 Telok Ayer St, Singapore 068626, P: 65-62200112 | USD | 132,731.00 | 132,731.00 | 111,708.99 | Unsecured | Reduced | Air tickets for PetroRig II Crews |
| 5 | 6/25/2029 | Lor Engineering Oilfield Services Pte Ltd | Blk 41 Simei Rise, #01-24 Singapore 528728, P: 65 65424578 | USD | 21,356.00 | 21,356.00 | 21,356.00 | Unsecured | | Services Work Performed |
| 6 | 6/23/2009 | Chuan Huat International Pte Ltd | No. 57 UBI Ave 1, #04-11, UBI Centre, Singapore 408936, P: 65 68440551 | SGD | 510.00 | 346.49 | 346.49 | Unsecured | Recalculated | Goods/Raw Materials |
| 7 | 6/25/2009 | Oncor Trading, Inc. | 21366 Provincial Boulevard, Katy, Texas 77450, P:281.579.1217 | USD | 10,317.81 | 10,317.81 | 10,317.81 | Unsecured | | Goods sold |
| 11 | 6/15/2009 | Innocom Technologies Pte Ltd | 18 Kaki Bukit Road 3 #04-09/10, Entrepreneur Business Centre, Singapore 415978, P: 065-67495022 | SGD | 3,100.00 | 2,106.14 | 2,106.14 | Unsecured | Recalculated | Goods sold |
| 13 | 7/8/2009 | Ce-Test & Measurement (S) Pte Ltd | Attn: Christine Tan, 10 Jalan Besar #B1-18 Sim Lim Tower, Singapore 208787, P: 65.62925161 | SGD | 1,480.00 | 1,005.51 | 1,005.51 | Unsecured | Recalculated | Goods sold |
| 14 | Rec'd 7/6/09 | Sanda Marketing Services | Attn: Chua Cheng Pou, No. 2 Jurong East Street 21 #04-01B, IMM Building, Singapore 609601, P: 65.63879537 | USD | 1,302.91 | 1,302.91 | 1,288.14 | Unsecured | Recalculated | Goods sold |
| 17 | 8/19/2009 | SDV Logistics (Singapore) Pte Ltd | DeOrchis & Partners, Attn: Olivier D. L. DuPont, 61 Broadway, Suite 1900, New York, New York 10006, P: 212.344.4700 | USD | 6,752.39 | 6,752.39 | 6,646.94 | Unsecured | Recalculated | Services Performed |

PetroRig II - Allowed Claims PetroRig II - Allowed General Unsecured Claims

| Claim No. | Date | Creditor | Address / Telephone | Currency | Original Filed Amount (filed Currency Amount) | Original Filed Amount (USD Amount) | Current Claim Amount (USD Amount (as of 2nd Omni) | Type | Disposition | Basis |
|---|---|---|---|---|---|---|---|---|---|---|
| 19 (PI claim) | 6/24/2009 | Crystal Offshore Pte. Ltd. | Pitchayan & Associates, P.C., 72030 Broadway, Jackson Heights, NY 11372 | USD | 617,672.54 | 617,672.54 | 1,192.21 | Unsecured | $366,505.21 reclassified to PII and reduced to $1,192.21; PI amount re-calculated to $249,107.55 (incorrect foreign exchange) | Goods & Services |
| 21 | Rec'd 9/3/09 | Noah Samuel Vedanaigam/ Megasteel Marine Engineering Pte Ltd | 182 Gul Circle, Singapore 629630 | SGD | 5,312.00 | 3,608.97 | 3,608.97 | Unsecured | | Goods Sold |
| 22 | 11/7/2009 | Cameron | 4646 Sam Houston Parkway N. Houston, TX 77041 | USD | 1,780,689.00 | 1,780,689.00 | 1,780,689.00 | Unsecured | | Goods Sold |
| 24 | 12/15/2009 | Svitzer Ocean Towage BV | Attn: Mr. Hans van der Donck, Jupiterstratt 33, 2132 HF Hoofddorp, Netherlands  c/o Winter Scott Solicitors, Attn: Kenneth Scott & Sophie Jane Hunt, St. Olave's House, Ironmonger Lane, London EC2V 8EY  Morgan Lewis Bockius LLP, Attn: Martin Conniff, 101 Park Ave, New York, NY 10178 | USD | 1,387,750.00 | 1,387,750.00 | 1,100,000.00 | Unsecured | Surviving; ASSUMING $2.2m settlement divided bw I and II) | Obligations under towage agreement |
| 28 | 12/17/2009 | PetroMENA ASA | Attn: Michael R. Piana, Larsen Oil & Gas USA, LLC, 2000 W. Sam Houston Pkwy S., Suite 675, Houston, TX 77042, P:713.785.7770 | USD | 1,299,570.76 | 1,299,570.76 | 1,299,570.76 | Unsecured - Petromena | Surviving | Management Fee / Recharges |

PetroRig II - Allowed Claims PetroRig II - Allowed General Unsecured Claims

| Claim No. | Date | Creditor | Address / Telephone | Currency | Original Filed Amount (filed Currency Amount) | Original Filed Amount (USD Amount) | Current Claim Amount (USD Amount) (as of 2nd Omni) | Type | Disposition | Basis |
|---|---|---|---|---|---|---|---|---|---|---|
| 31 | 12/17/2009 | COR International Ltd. | Attn: Michael R. Piana, Larsen Oil & Gas USA, LLC, 2000 W. Sam Houston Pkwy S., Suite 675, Houston, TX 77042, P.713.785.7770 | USD | 21,725.00 | 21,725.00 | 21,725.00 | Unsecured | Amends Claim entered in error on Rig I as claim no. 70. | |
| | | | | | | | 4,361,561.97 | | | |

Rig II

PetroRig III Allowed General Unsecured Claims

| Claim No. | Date | Creditor | Address / Telephone | Currency | Original Filed Amount (filed Currency Amount) | Original Filed Amount (USD Amount) | Current Claim Amount (USD Amount) (as of 2nd Omni) | Type |
|---|---|---|---|---|---|---|---|---|
| 8 | 8/19/2009 | PetroMENA ASA | c/o Joanne Romero, Lewis Brisbois Bisgard & Smith LLP, 199 Water Street, 25th Floor, New York, New York, 10038 | USD | 307,500.00 | 307,500.00 | 307,500.00 | Unsecured - Petromena |
| 13 | 12/17/2009 | PetroMENA ASA | c/o Michael R. Piana, Larsen Oil & Gas USA, LLC, 2000 W. Sam Houston Pkwy S., Suite 675, Houston, TX 77042 | USD | 551,379.00 | 551,379.00 | 551,379.00 | Unsecured - Petromena |
| | | | | | | | 858,879.00 | |

**Exhibit B**

**Form of LOG Claims Stipulation**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------------

|                              |     |                          |
| ---------------------------- | --- | ------------------------ |
|                              | x   |                          |
|                              | :   | Chapter 11               |
| In re:                       | :   |                          |
|                              | :   | Case No. 09-13083 (JMP)  |
| PETRORIG I PTE LTD, *et al.,* | :   |                          |
|                              | :   | (Jointly Administered)   |
|               Debtors.       | :   |                          |
|                              | :   |                          |
|                              | x   |                          |

------------------------------------------------------------------------------

**STIPULATION AND ORDER**
**RESOLVING THE CLAIMS OF THE LARSEN OIL & GAS ENTITIES**

This *Stipulation And Order Resolving The Claims Of The Larsen Oil & Gas Entities* (the "Stipulation") is by and among PetroRig I Pte Ltd ("PetroRig I"), PetroRig II Pte Ltd ("PetroRig II"), PetroRig III Pte Ltd ("PetroRig III," together with PetroRig I and PetroRig II, the "Debtors"), Larsen Oil and Gas Ltd. ("LOG UK"), Larsen Oil and Gas FZCO ("LOG Dubai"), Larsen Oil and Gas Pte Ltd. ("LOG Singapore") and Larsen Oil & Gas USA, LLC ("LOG USA," together with LOG UK, LOG Dubai and LOG Singapore, "LOG" or the "LOG Entities"). The parties hereby stipulate and agree as follows:

WHEREAS, on May 17, 2009, the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Bankruptcy Court for the Southern District of New York, Case No. 09-13083 (JMP) (the "Bankruptcy Court"); and

WHEREAS, on May 20, 2009, the Court entered an order providing for the procedural consolidation and joint administration of the  Chapter 11 Cases [Docket No. 13] pursuant to Bankruptcy Rule 1015(b); and

WHEREAS, the Debtors are operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

WHEREAS, on August 13, 2009, the Court entered an order authorizing the Debtors to reject certain management agreements with certain of the LOG Entities pursuant to section 365 of the Bankruptcy Code [Docket No. 107]; and

WHEREAS, each of the LOG Entities has asserted "Claims" (as defined in section 101(5) of the Bankruptcy Code) against one or more of the Debtors, and filed various proofs of claim against the Debtors in respect thereto, which are reflected in the Debtors' claims register (the "LOG Filed Claims"); and

WHEREAS, on March 8, 2010, the Debtors filed an objection to certain of the LOG Filed Claims, which the Debtors subsequently amended and supplemented on April 21, 2010 [Docket Nos. 319 and 367] (the "Claims Objection");

WHEREAS, on March 8, 2010, the Debtors filed their *Motion for Contempt and Sanctions Against Larsen Oil and Gas Ltd.* [Docket No. 317]; and

WHEREAS, on April 21, 2010, the LOG Entities filed a response to the Claims Objection [Docket No. 370] (the "LOG Response"), which amended and restated the LOG Filed Claims, in part, as follows:

| Creditor | PetroRig I | PetroRig II | PetroRig III | Total Approximate Amount of Claims ($) |
|---|---|---|---|---|
| LOG Singapore | $14,000,000 | $8,000,000 | $2,000,000 | $24,000,000 |
| LOG UK | $44,000,000 | $43,000,000 | $21,000,000 | $108,000,000 |
| LOG FZCO | | | $23,000,000 | $23,000,000 |
| | | | Total | **$155,000,000** |

WHEREAS, in addition to the amounts reflected in the table above, LOG UK has asserted contingent and unliquidated Claims for indemnity against (i) PetroRig I in the amount of $17 million, relating to LOG UK's potential liability to Petrobras America Inc., and

(ii) PetroRig II in the amount of $60 million, relating to LOG UK's potential liability to Petróleo Brasileiro S.A. (collectively, with the LOG Filed Claims (as amended by the LOG Response), the "LOG Claims"); and

WHEREAS, Debtors dispute all amounts claimed by the LOG Entities and have informally asserted certain counterclaims and rights of setoff against the LOG Entities; and

WHEREAS, on May 31, 2011, the LOG Entities filed (i) the *Motion of the Larsen Oil & Gas Entities for an Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 or in the Alternative Appointing a Chapter 11 Trustee* [Docket No. 546] (the "Motion to Convert") and (ii) the *Motion For An Order Estimating And Temporarily Allowing The Claims Of The Larsen Oil & Gas Entities* [Docket No. 545] (the "Motion to Estimate"), pursuant to which the LOG Entities seek an expedited procedure to establish the merits of the LOG Claims and the appointment of a chapter 7 trustee; and

WHEREAS, on June 3, 2011, the Debtors filed their *Second Amend Joint Plan of Reorganization* [Docket No. 556] (as amended or modified, the "Plan"), pursuant to which the Debtors have sought to equitably subordinate the LOG Claims to all other Claims pursuant to section 510(c) of the Bankruptcy Code; and

WHEREAS, the Debtors and the LOG Entities have negotiated extensively in good faith and at arms' length and have reached a consensual resolution, as set forth below, with respect to the LOG Claims to avoid incurring significant additional expenses that would necessarily be incurred in litigating these matters, including the merits of the LOG Claims and the confirmation of the Plan, to an uncertain conclusion.

**NOW THEREFORE, IT IS HEREBY STIPULATED, AGREED AND ORDERED AS FOLLOWS:**

1.        Upon the entry of a Final Order[1] approving this Stipulation, the LOG Entities are hereby granted allowed unsecured claims against each of the Debtors' estates in the aggregate amount of $5 million (the "LOG Settlement Claims") in full and complete satisfaction of the LOG Claims, provided, however, that: (i) the apportionment among the Debtors of the amounts payable to the LOG Entities on account of the LOG Settlement Claims shall be determined by the Debtors, in their sole discretion and in accordance with the terms of the Plan; (ii) notwithstanding anything herein or in the Plan to the contrary, the aggregate maximum amount payable to  the LOG Entities on account of the LOG Settlement Claims shall be $5 million; and (iii) LOG UK shall be designated to vote each of the LOG Settlement Claims in respect of the Plan.

2.        The Debtors will modify the Plan to provide that the LOG Entities shall receive, on the first distribution date provided for under the Plan, payment of $5 million in cash, in the aggregate (the "Settlement Amount") from the Debtors' estates on account and in full satisfaction of the LOG Settlement Claims, as provided in paragraph 1.  LOG UK is hereby designated by each of the LOG Entities to receive and hold in trust the Settlement Amount payable to such LOG Entity under the Plan.

3.        Upon entry of a Final Order approving this Stipulation, each of the LOG Entities hereby irrevocably, unconditionally and without reservation of any kind waives, generally releases and forever discharges the Debtors, the Debtors' estates, and their respective directors,

---

[1] For the purposes of this Stipulation, the term "Final Order" shall mean an order approving this Stipulation that has not been stayed, reversed or amended and the time, as computed under the Bankruptcy Rules, to appeal or seek review or rehearing of such order (or any revision, modification or amendment thereof) has expired and no appeal or petition for review or rehearing of such order was filed, or if filed, remains pending.

attorneys, professionals, accountants, financial advisors, and agents (collectively, the "Estate Parties") from and against any and all causes of action, Claims, interests, liabilities, obligations, rights, demands, remedies, suits, debts, judgments, and damages, of any kind whatsoever, whether direct or derivative, matured or unmatured, disputed or undisputed, known or unknown, liquidated or unliquidated, foreseen or unforeseen, discoverable or undiscoverable, fixed or contingent, in law, equity or otherwise, which any of the LOG Entities has, had, or may have in the future against any of the Estate Parties relating to the LOG Claims or the Debtors, excluding, however, the LOG Entities' rights in relation to the LOG Settlement Claims under the terms of the Plan and this Stipulation.

4.    Upon entry of a Final Order approving this Stipulation, each of the Estate Parties hereby irrevocably, unconditionally and without reservation of any kind waives, generally releases and forever discharges the LOG Entities and their respective officers, directors, managers, attorneys, professionals, accountants, financial advisors, and agents (collectively, the "LOG Released Parties") from and against any and all causes of action, claims, interests, liabilities, obligations, rights, demands, remedies, suits, debts, judgments, and damages, of any kind whatsoever, whether direct or derivative, matured or unmatured, disputed or undisputed, known or unknown, liquidated or unliquidated, foreseen or unforeseen, discoverable or undiscoverable, fixed or contingent, in law, equity or otherwise, which any such Estate Party has, had, or may have in the future against any of the LOG Released Parties relating to the Debtors and their estates, excluding, however, the Estate Parties' rights in relation to the LOG Settlement Claims under the terms of the Plan and this Stipulation.

5.    The LOG Entities shall not file any further proofs of claim or requests for the payment of administrative expenses against the Debtors or the Debtors' estates.  Upon entry of a

Final Order approving this Stipulation, (i) all proofs of claim filed by the LOG Entities in the Chapter 11 Cases are hereby disallowed and shall be expunged from the Debtors' claims register by the clerk of the Bankruptcy Court, (ii) the Motion to Estimate and Motion to Convert are hereby deemed withdrawn, and (iii) LOG and the Debtors shall jointly cause the dismissal of the complaint LOG filed with the Bankruptcy Court on July 1, 2011, relating to certain intercompany claims.

6. This Stipulation shall be governed by New York law, excluding its conflicts of laws principles. The Bankruptcy Court shall retain jurisdiction to resolve any disputes between the parties arising with respect to this Stipulation.

7. The undersigned, on behalf of the Debtors and the LOG Entities, as applicable, each represents and warrants that he or she has been duly authorized and empowered to execute and deliver this Stipulation on behalf of such party. The LOG Entities represent and warrant to the Debtors, as of the date hereof, that they are collectively the sole holder of all of the LOG Claims against the Debtors and the Debtors' estates and no LOG Entity has assigned, sold, or otherwise transferred any of the LOG Claims against the Debtors or the Debtors' estates.

8. This Stipulation shall not be effective until it is approved by the Bankruptcy Court; provided, however, that the parties shall support such Bankruptcy Court approval and comply with this Stipulation pending the Bankruptcy Court's entry of a Final Order approving or disapproving this Stipulation, which may include a Final Order confirming the Debtors' Plan and approving this Stipulation.

9. Nothing in this Stipulation or any negotiations or proceedings in connection herewith shall constitute or be deemed to be evidence of an admission by any party of any liability or wrongdoing whatsoever, or the truth or untruth, or merit or lack of merit, of any claim

or defense of any party. Neither this Stipulation nor any negotiations or proceedings in connection herewith may be used in any proceeding against any party for any purpose whatsoever except with respect to effectuation and enforcement of this Stipulation.

10.     This Stipulation contains the entire agreement of the parties with respect to its subject matter and supersedes any prior or contemporaneous oral or written agreements. The parties understand and agree that this Stipulation may not be altered, amended, modified, or otherwise changed in any respect except by a writing duly executed by each party hereto. This Stipulation was mutually drafted and negotiated by the parties, and each party agrees that any rule of construction to the effect that ambiguities are to be resolved against the drafting party will not be employed in the interpretation, construction, or enforcement of this Stipulation.

11.     This Stipulation may be executed simultaneously or in one or more counterparts, each of which shall be an original, but all of which together shall constitute one and the same instrument. An electronic copy of a signature page is the equivalent of an original signature page.

12.     This Stipulation shall be binding upon (i) the Debtors, (ii) the LOG Entities and (iii) their respective predecessors, successors, subsidiaries, assignees, agents, managers, and employees, including, but not limited to, any trustee appointed under chapter 7 of the Bankruptcy Code.

Dated: New York, New York
        [          ], 2011

**LARSEN OIL AND GAS LTD.**

By: _____
        Ken Hodcroft

**LARSEN OIL AND GAS FZCO**

By: _____
        Michael R. Piana

**LARSEN OIL AND GAS PTE LTD.**

By: _____
        Michael R. Piana

**LARSEN OIL & GAS USA, LLC**

By: _____
        Michael R. Piana

**PETRORIG I PTE LTD, PETRORIG II PTE LTD, PETRORIG III PTE LTD**

By: _____
        Eugene I. Davis

So Ordered this _____ day of _____, 2011.

_____
**United States Bankruptcy Judge**